Matter of Karambelas (2022 NY Slip Op 00129)





Matter of Karambelas


2022 NY Slip Op 00129


Decided on January 11, 2022


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 11, 2022
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Sallie Manzanet-Daniels,J.P.,
Troy K. Webber
Anil C. Singh
Lizbeth González
Julio Rodriguez III, JJ.


Motion No. 2021-03316 Case No. 2021-03559 

[*1]In the Matter of Nicholas G. Karambelas (Admitted as Nicholas George Karambelas), an Attorney and Counselor-at Law: Attorney Grievance Committee for the First Judicial Department, Petitioner, Nicholas G. Karambelas, (OCA Atty. Reg. No, 2218188) Respondent.



Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the First Judicial Department on February 19, 1980.




Jorge Dopico, Chief Attorney, Attorney Grievance Committee, New York
(Denice M. Szekely, of counsel), for petitioner.
Respondent pro se.



Per Curiam 


Respondent Nicholas G. Karambelas was admitted to the practice of law in the State of New York by the First Judicial Department on February 19, 1980, under the name Nicholas George Karambelas.[FN1] As the admitting Judicial Department, this Court retains continuing jurisdiction over respondent (Rules for Attorney Disciplinary Matters [22 NYCRR] § 1240.7[a][2]).
By order entered October 6, 2020, the Maryland Court of Appeals disbarred respondent, effective immediately, for inter alia, the intentional misappropriation of estate funds.
Now, the Attorney Grievance Committee (the Committee) seeks an order, pursuant to Judiciary Law § 90(2), 22 NYCRR 1240.13, and the doctrine of reciprocal discipline, finding that respondent has been disciplined by a foreign jurisdiction, directing him to demonstrate why he should not be disciplined in New York based on his discipline in Maryland, and disbarring him, or, in the alternative, sanctioning respondent as this Court deems appropriate. Respondent appears pro se and opposes the motion.
In September 2019, the Maryland Attorney Grievance Commission (the Maryland AGC) filed a disciplinary action against respondent charging him with professional misconduct in connection with an estate matter. In February 2020, a hearing was held before a Maryland state circuit court judge. Respondent participated via telephone. While respondent informed the court that he did not believe he could meaningfully participate due to his ongoing health problems, he did not seek to adjourn the hearing. Respondent submitted two documents that were entered into evidence: a settlement agreement in litigation related to the estate matter at issue, and a factual clarification of his initial response to the Maryland AGC's petition. These documents comprised the entirety of respondent's case.
The circuit court judge issued findings of fact and proposed conclusions of law, which neither respondent nor the Maryland AGC contested. The relevant facts of the misconduct are as follows.
In 1995, I.M. executed a will with a nonparty attorney. I.M.'s three intended beneficiaries under the 1995 will were: P.B. (I.M.'s daughter), A.B. (P.B.'s adopted son and nephew), and D.K. (P.B.'s nephew and A.B.'s half-brother). I.M.'s relevant properties under the 1995 will included a residential property in Bethesda, Maryland (the Bethesda residence), and two commercial properties Ä one located in Wheaton, Maryland (the Wheaton property) and another in Waldorf, Maryland (the Waldorf property).
Respondent was retained by Maryland resident I.M. in 1996. In 1997, I.M. executed a codicil to her 1995 will which revoked the appointment of her former attorney as her personal representative and appointed respondent in his stead. Respondent was to serve as co-personal representative along with P.B., who was already appointed personal representative under the 1995 [*2]will.
I.M. died in December 2002, but respondent took no action to open the estate on her behalf until January 2005. At this juncture, he filed a petition to appoint P.B. as the personal representative of I.M.'s estate. However, respondent failed to disclose the existence of the 1995 will and misrepresented in the petition that I.M. had died intestate.
P.B. retained respondent to represent her regarding the estate. Respondent advised P.B. that it was necessary to sell the Wheaton property to pay estate taxes. P.B. sold the Wheaton property for $908,000 and, per respondent's advice, placed the net sale proceeds of $852,305 in respondent's attorney trust account.
Between 2005 and 2007, respondent misappropriated the proceeds via transfers to his personal account, cash withdrawals and checks from his trust account and used the money to pay for his daughters' private school tuition, his personal credit card bills, donations to charities in his name, and professional liability insurance policy payments. He also issued income checks to P.B. ranging in amounts from $5,000 to $6,500. By August 2007, only $1,596 of the net sale proceeds remained in respondent's attorney trust account. In total, the circuit court judge found that respondent misappropriated $576,990.82. Respondent misrepresented to P.B. that the misappropriated proceeds were lost in the 2008 stock market crash.
During this period, respondent filed an amended inventory and a first and final accounting in the Maryland probate court that contained intentional misrepresentations, which, inter alia, misidentified P.B. as the sole beneficiary of the estate. Respondent also failed to disclose the receipt of funds from the sale of the Wheaton property and his misappropriation of those funds.
In 2011, D.K. and A.B. uncovered evidence of respondent's misconduct concerning the sale of the Wheaton property and found copies of wills for both P.B. and I.M. They determined that respondent was attempting to sell the Waldorf property without P.B.'s knowledge or consent. P.B. subsequently executed a new power of attorney in favor of D.K., who was able to prevent the sale of the property.
Respondent did not use any of the net sale proceeds of the Wheaton property to pay the estate's tax obligations or advise P.B. to file the estate's tax returns. His deception and lack of competence in administering the estate forced the sale of the Bethesda residence in order to satisfy the estate's resulting debt. Consequently, A.B., who was living in the Bethesda residence at that time, moved into the back room of a store located on the Waldorf property, which he converted into a one-room apartment.
The probate court refused to admit I.M.'s will because the statute of limitations had run, forcing D.K. and A.B. to reopen the estate and administer it intestate. As a result, additional family members became beneficiaries, leading to further litigation that slowed the administration of the estate and reduced the inheritance [*3]ultimately received by D.K. and A.B.
D.K. and A.B. sued respondent and his law firm. The parties settled the matter for $850,000. Respondent's malpractice insurance paid $500,000 (which was the dollar limit of his malpractice insurance policy) and respondent paid the remaining $350,000.
The circuit court judge determined that respondent had committed professional misconduct, which included intentional misappropriation of client funds and false and
misleading statements to the probate court, in violation of the Maryland Lawyers' Rules
of Professional Conduct (LRPC) rules 1.1 (failure to provide competent representation), 1.4(a) and (b) (failure to adequately communicate with client), 1.15(a) and (d) (failure to
separate and safeguard estate funds and to maintain proper bookkeeping records
concerning same, and failure to promptly notify and deliver funds in which a client or
third person has an interest), 3.3(a)(1) (knowing lack of candor with a tribunal), 8.4(a)
— (d) (prohibiting conduct violative of the Maryland LRPCs, commission of a criminal
act that reflects adversely on the attorney's honesty, trustworthiness or fitness as an
attorney in other respects, conduct involving dishonesty, fraud, deceit or
misrepresentation, and conduct that is prejudicial to the administration of justice), District of Columbia Rules of Professional Conduct 1.15(a) and (c) and
Maryland Business Occupations and Professions Article (MBOPA) § 10-306 ("A lawyer
may not use trust money for any purpose other than the purpose for which the trust
money is entrusted to the lawyer" — violation of which is a misdemeanor under MBOPA
§ 10-6-606[b]).
Respondent filed exceptions with the Court of Appeals of Maryland as to mitigation and contended that a public reprimand was the appropriate sanction for his misconduct. In mitigation, respondent asked the Court of Appeals to consider the following factors: he personally paid $350,000 pursuant to a settlement agreement, he practiced law without incident since 1980 until the event at issue and was unlikely to repeat his misconduct, and his misconduct was remote in time from the disciplinary proceeding as the underlying offense occurred between 2006 and 2007.[FN2] The Maryland AGC raised numerous factors in aggravation and argued that respondent should be disbarred.
The Maryland Court of Appeals heard oral argument on October 5, 2020. On October 6, 2020, it issued a per curiam order, disbarring respondent effective immediately, with an opinion to follow.
On April 1, 2021, the Maryland Court of Appeals issued its opinion. The Maryland Court of Appeals treated the circuit court judge's unchallenged findings of fact as established and agreed with the judge's conclusions of law. The Maryland Court of Appeals rejected respondent's arguments in mitigation except for his having no prior disciplinary history. It found that respondent's payment of $350,000 only constituted partial restitution.[FN3] It determined that respondent's argument as to the [*4]remoteness of his underlying misconduct was unavailing and inconsistent with Maryland case law. The court also determined that it could not find respondent was unlikely to repeat his misconduct simply because he had not been subject to prior disciplinary action.
On May 27, 2021 the District of Columbia Court of Appeals imposed reciprocal discipline and disbarred respondent based on his disbarment in Maryland. On September 17, 2021, the United States Court of Appeals for the District of Columbia Circuit also disbarred respondent on basis of the discipline imposed in Maryland.
In a proceeding seeking reciprocal discipline pursuant to 22 NYCRR 1240.13, a respondent may raise the following defenses: (1) a lack of notice or opportunity to be heard in the foreign jurisdiction constituting a deprivation of due process; (2) an infirmity of proof establishing the misconduct; or (3) that the misconduct for which the attorney was disciplined in the foreign jurisdiction does not constitute misconduct in this state.
Respondent has not raised any of these defenses. Moreover, none of them apply.
Respondent was not deprived of due process, since he was fully advised of his misconduct and participated in the hearing. There is no infirmity of proof since the misconduct findings at issue (which respondent does not contest) are amply supported by the record. The misconduct for which respondent was disciplined in Maryland would constitute misconduct in New York in violation of New York's Rules of Professional Conduct (22 NYCRR 1200.0) rules 1.1(a), 1.4(a) and (b), 1.15 (a), (c), and (d), 3.3(a)(1), and 8.4(b), (c), and (d).
As to sanction, the Committee requests disbarment. Respondent opposes, asserting again the mitigation previously rejected by the Maryland Court of Appeals (see Karambelas, 473 Md at 134, 248 A3d at 1019).
We generally do not depart from the foreign jurisdiction's sanction (see Matter of Blumenthal, 165 AD3d 85 [1st Dept 2018]) and only in rare instances will this Court deviate from this general rule (Matter of McHallam, 160 AD3d 89, 92 [1st Dept 2018]). Under the circumstances presented, there is no reason to depart from the general rule. This Court has consistently imposed the sanction of disbarment for the intentional conversion of client funds (see e.g. Matter of Carlos, 192 AD3d 170, 172 [1st Dept 2021]; Matter of Arnold, 180 AD3d 72 [1st Dept 2019]).
Accordingly, the Committee's motion, pursuant to 22 NYCRR 1240.13, should be granted and respondent is disbarred from the practice of law and his name is stricken from the roll of attorneys and counselors-at-law in the State of New York.
All concur.
It is Ordered that the Attorney Grievance Committee's motion for reciprocal discipline pursuant to 22 NYCRR 1240.13, predicated upon similar discipline imposed by the Court of Appeals of Maryland, is granted, and respondent Nicholas G. Karambelas, admitted as Nicholas George Karambelas, is disbarred and his name stricken from the roll [*5]of attorneys in the State of New York, effective immediately, and until further order of this Court, and
It is further Ordered that pursuant to Judiciary Law § 90, effective immediately and until further order of this Court, respondent Nicholas G. Karambelas, admitted as Nicholas George Karambelas, is: (1) commanded to desist and refrain from the practice of law in any form, either as principal or agent, clerk or employee of another, or from holding himself out in any way as an attorney and counselor-at-law; (2) forbidden to appear as an attorney or counselor-at-law before any court, judge, justice, board or commission or other public authority; and (3) forbidden to give another an opinion as to the law or its application or advise in relation thereto, and
It is further Order that respondent Nicholas G. Karambelas, admitted as Nicholas George Karambelas, is directed to fully comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15), and
It is further Ordered that if respondent has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith.
Entered: January 11, 2022



Footnotes

Footnote 1: Respondent was also admitted to practice law in the District of Columbia in 1980 and in the State of Maryland in 1999.

Footnote 2: We note that the circuit court judge found that respondent's misconduct began in 2005 and lasted until at least 2011 when respondent attempted to sell the Waldorf property without P.B.'s knowledge or consent.

Footnote 3: The Maryland Court observed that, "the $500,000 that the insurance company paid was solely attributed to Respondent's gross mishandling of the estate" while the "remaining $350,000 that Respondent paid was attributed to his theft of the Wheaton property sale proceeds" (see Attorney Grievance Commn. Of Maryland v Karambelas, 473 Md 134, 172-173, 248 A3d 1019, 1041 [2021]).