Matter of Fenstermaker (2025 NY Slip Op 02878)

Matter of Fenstermaker

2025 NY Slip Op 02878

Decided on May 13, 2025

Appellate Division, First Department

Per Curiam 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: May 13, 2025
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Present — Hon. Sallie Manzanet-Daniels Justice Presiding
Cynthia S. Kern David Friedman Martin Shulman Julio Rodriguez III
Justices.

Motion No. 2025-00491|Case No. 2025-00554|

[*1]In the Matter of Scott Lloyd Fenstermaker an attorney: Attorney Grievance Committee for the First Judicial Department, Petitioner, Scott Lloyd Fenstermaker (OCA Atty Reg. 2519866), Respondent.

Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Scott Lloyd Fenstermaker, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the Second Judicial Department on February 3, 1993.

Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Louis J. Bara, of counsel), for petitioner
Respondent, pro se.

Per Curiam 

Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Scott Lloyd Fenstermaker, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the Second Judicial Department on February 3, 1993.
Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Louis J. Bara, of counsel), for petitioner
Respondent, pro se.
Motion No. 2025-00491 — March 3, 2025
In the Matter of Scott Lloyd Fenstermaker, an attorney
Per Curiam Respondent Scott Lloyd Fenstermaker was admitted to the practice of law in the State of New York by the Second Judicial Department on February 3, 1993. Respondent maintains a registered address in the First Judicial Department.
By order dated June 21, 2024, the Supreme Judicial Court of Maine suspended respondent from the practice of law for three years, effective nunc pro tunc to March 17, 2023, the date of his interim suspension, for, among other things, his failure to provide competent representation to his criminal clients and his harassing conduct toward two prosecutors.
On January 24, 2025, the Attorney Grievance Committee (AGC) filed a motion seeking an order, pursuant to Judiciary Law § 90(2), Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.13, and the doctrine of reciprocal discipline, finding that respondent has been disciplined by a foreign jurisdiction, directing him to demonstrate why discipline should not be imposed in New York for the misconduct underlying his discipline in Maine, and suspending respondent for three years or, alternatively, sanctioning respondent as the Court deems just and proper under the circumstances. Respondent opposes.
The AGC's motion should be granted and respondent suspended for one year.
By order dated March 17, 2023, the Supreme Judicial Court of Maine imposed an immediate interim suspension, finding that respondent had "committed violations of at least Maine Rules of Professional Conduct 8.4(a), (b), and (d) (unlawful conduct, conduct prejudicial to the administration of justice)," the circumstances of which evidenced that he posed "an imminent threat to clients, the public and to the administration of justice." Respondent's interim suspension was based on, among other things, allegations of criminal conduct, confrontational behavior toward a prosecutor, and making unsupported allegations against a judge.[FN1]
In March 2024, the court held a five-day hearing at which respondent appeared pro se. The court then issued an April 25, 2024 decision in which it made misconduct findings against respondent. Following oral argument on sanction, the court issued a June 21, 2024 order and decision imposing a three-year suspension retroactive to the date of respondent's interim suspension.
Respondent, who had practiced criminal defense in New York prior to moving to Maine in 2020, was admitted to the Maine bar in May 2022 and was registered with the Maine [*2]Commission on Indigent Legal Services (MCILS). Respondent's discipline in Maine stems from a series of actions he took over an approximately six-month period.
First, in September 2022, respondent went to a car lot with his criminal client, J.C., to retrieve her car which had been impounded as a possible forfeiture. While the hold on the vehicle was released, respondent and his client had been informed that the vehicle would not be returned until the outstanding storage fees had been paid. Nevertheless, respondent and J.C. went to the impound lot with intent of retrieving the vehicle without paying the storage fees. Respondent felt that the storage fee of $75 per day was unreasonable and that the state should pay the fee incurred while the State determined whether to seek forfeiture of the vehicle. When respondent and J.C. arrived at the lot, they proceeded directly to J.C.'s car and tried to start it. They did not first engage the lot owners to ask about the car or the fees. Because the car's battery was dead, respondent and J.C. attempted to charge the battery using respondent's car.
The lot owner's wife approached respondent and J.C. and asked them to leave the property. Respondent refused and indicated that he would not leave without his client's car. The lot owner's wife called 911 and attempted to stop both respondent's and J.C.'s cars from leaving by blocking the way using a backhoe. While waiting for the police to arrive, respondent moved his car closer to J.C.'s vehicle and bumped into the lot owner with his car.
Because of his conduct at the impound lot, respondent was summonsed and charged with assault, reckless conduct, criminal trespass, and attempted theft. J.C., who was under bail conditions that included no new criminal conduct, was also charged. The criminal case against respondent has not yet been tried.
In the disciplinary proceeding that led to his suspension, respondent asserted that the criminal charges against him stemming from the incident in the impound lot were brought in retaliation for an August 2022 email that he sent to an Assistant District Attorney (ADA) C.R. threatening to file a federal lawsuit on behalf of another client who was charged with criminal trespass on town property. Specifically, respondent's client, who had been served with a "No Trespass Notice" forbidding his presence at a specific location, was charged with trespass after he appeared to vote at his lawful polling place. The disciplinary judge found respondent's retaliation claim to be without merit.
In December 2022, at J.C.'s arraignment, a pre-recorded video was played for the defendants present in court. The video discussed the criminal process and explained their rights. Respondent stood up and addressed those awaiting arraignment and stated that the video was propaganda, that it was purposefully misleading, and that the criminal system is corrupt. Respondent offered to discuss it with anyone present at the proceeding.
After respondent was [*3]charged in the car lot incident, respondent filed a motion to withdraw as defense counsel in cases where he had been appointed as a member MCILS. Respondent claimed a possible conflict in that it could be perceived, due to his criminal case, that he would curry favor with the district attorney's office to positively impact his criminal case at the expense of his clients' cases. The court granted the motion and new counsel was appointed.[FN2]
Nonetheless, respondent met with several clients who stated that they wanted respondent to continue to represent them. Respondent obtained written waivers of conflict for some of the clients and oral waivers for others. In one matter, respondent entered a notice of appearance and filed a motion to dismiss arguing that the client had been deprived of the right to an attorney of his choice, namely respondent. Respondent drafted similar motions to dismiss for several other clients but instructed the individuals not to file the motions. In these matters, respondent's name was not on the motions, and he did not enter his appearance; nor did respondent consult with the attorneys who were representing those defendants. The basis for the purported pro se motions to dismiss was that the clients were denied the right to have respondent as their attorney. The disciplinary judge opined that "[t]he motions had no chance of success."
In February 2023, respondent brought a federal action on behalf J.C. (the client from the impound lot incident) and others challenging Maine's abandoned vehicle law. The disciplinary judge opined that, while certain allegations in the complaint may have had merit, respondent alleged, without basis, that "towing companies, law enforcement agencies, and the Bureau of Motor Vehicles were engaged in a scheme to steal motor vehicles."
In a December 14, 2022, email, respondent accused ADA H.S. of tampering with video evidence in the case of defendant J.W., who had met with respondent but did not retain him. Respondent also never entered an appearance on J.W.'s behalf. In the email, respondent stated that he intended to report the ADA to federal criminal authorities and offered the ADA H.S. opportunity to provide information in her defense. The ADA, who felt that the intent of the email was to intimidate her, initiated a criminal investigation of respondent based primarily on his email, which the disciplinary judge opined "may not have been appropriate." Nevertheless, the judge also opined that "[t]he information [respondent] had as of [the] date [of his email], or any date, provided no justification for [his] email threatening [the ADA] with criminal prosecution. Furthermore, [respondent] was not representing J.W. at the time."
Also, on or about February 8, 2023, respondent initiated a confrontation with ADA M.R. whom respondent felt had endangered his client's life when he publicly raised his client's allegations of gun theft by the police. As described in the resulting disciplinary order:
"as [the [*4]ADA] was leaving the courthouse, [respondent] called out from a courtroom and followed [the ADA]. [Respondent] was very angry and out of control. He swore at [the ADA] repeatedly and belittled him. He 'got in his face.'
"Although [respondent] was not going to strike [the ADA], a judicial marshal felt the nature of the confrontation suggested that he might. The marshal stepped between them and instructed [respondent] to leave the courthouse. It took a couple of requests before [respondent] complied and left the courthouse.
"[The client] did not feel that [the ADA's] actions endangered his life. He did feel as though [respondent] was sticking up for him.
"[The ADA] was genuinely shaken and made a complaint to the Board based on the incident. There is no evidence his complaint was done in consultation with anyone from [the ADA's office] or anyone else."
The disciplinary judge found that respondent violated Maine Rules of Professional Conduct (ME RPC) rule 1.1 when he failed to provide his client J.C. with competent representation by taking her to remove her car from the impound lot "knowing the lot owners would object to removing the car from the lot and knowingly exposing her to the risk of complicating her legal situation, including an arrest and a charge of Violating Conditions of Release." The judge continued, "Although he did make an effort to persuade to take a different course, he did not explore any other legal action. Exposing his client to the consequences of an extra-legal action is not competent representation."
The court also found that respondent violated ME RPC's rules 1.1 and 1.7 (conflict of interest) with respect to his former MCILS clients based on his activities related to his motion for withdrawals and subsequent communication with former clients regarding the possible filings of pro se motions to dismiss.
In addition, the court found that respondent's filed action alleging the existence of a criminal car theft ring and other allegations concerning a conspiracy to silence him, among other things, violated ME RPC 3.1 (frivolous litigation).
The court further found that respondent made frivolous and false statements during the disciplinary proceeding, namely, baseless accusations regarding, among others, bar counsel; and he requested that a judge in his federal disciplinary matter recuse himself because he "had served in the 'fetid and corrupt' state court system."
Respondent was also found to have violated ME RPC's rule 3.7(a) ("[a] lawyer shall not act as advocate at a tribunal in which the lawyer is likely to be a necessary witness") based on the filed federal action, noting, among other things, that "[respondent] himself confuses his role as advocate and his role as participant in the pleadings themselves." The court's additional finding that respondent violated ME RPC's rule 4.4(a) ("(i]n representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a [*5]third person") was based on his confrontations with the ADAs.
The court also found that respondent violated ME RPC's rules 8.2(a) ("[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge"), 8.4(a) (violate or attempt to violate a disciplinary rule), and 8.4(d) (conduct prejudicial to the administration of justice) based upon, among other things, respondent's statements to two judges, other conduct before the courts, and his urging of defendants to file the pro se motions to dismiss.
Following issuance of the court's April 25, 2024 decision setting forth its misconduct findings: the Board of Bar Overseers submitted a memorandum addressing sanction; respondent declined to submit a memorandum; neither party requested a sanction hearing; but the court heard oral argument, with the Board of Bar Overseers seeking a suspension of over a year and probation with conditions upon reinstatement.
By June 21, 2024 order and decision, the court imposed a three-year suspension, effective nunc pro tunc to the date of respondent's interim suspension.
In a proceeding seeking reciprocal discipline, as here, pursuant to 22 NYCRR 1240.13, respondent may raise the following defenses: (1) lack of notice or opportunity to be heard in the foreign jurisdiction constituting a depravation of due process; (2) an infirmity of proof establishing the misconduct; or (3) that the misconduct for which the attorney was disciplined in the foreign jurisdiction does not constitute misconduct in this state (see Matter of Milara, 194 AD3d 108, 110 [1st Dept 2021]).
The AGC maintains that none of the defenses apply because "respondent was given proper notice and had an opportunity to answer the allegations in the Maine proceedings, to wit: respondent took part in a hearing conducted from March 11 through March 15, 2024; he had an opportunity to submit written papers in regard to same"; he "has no basis to raise an infirmity-of-proof defense as the alleged misconduct was investigated and litigated before the [Maine court] during which the court considered both documentary and testimonial evidence"; and "respondent's Maine misconduct also violated the New York Rules of Professional Conduct."
As to sanction, the AGC maintains that a three-year suspension is the appropriate reciprocal discipline as it is commensurate with the discipline imposed in Maine and "appropriate given the Court's precedent and the totality of the circumstances."
By February 21, 2025 affidavit, respondent opposes the motion. Respondent disputes the finding that he failed to provide competent representation in violation of ME RPC 1.1 with respect to the motions to dismiss that he prepared as pro se filings for his former criminal clients. Respondent argued that there is insufficient evidence to prove this charge "as the Court took no evidence as to what any defendants' circumstances may have [*6]been or how the motions in question did not directly address those circumstances." As to his bail conditioned client J.C. and the impound lot incident, "[w]ith regard to the finding of the consequences of extra-legal action, there is no evidence as to what the consequences could have been"; and, contrary to the court's finding, he did explore other legal action as evidenced by his having brought a federal action on J.C.'s behalf.
Additionally, respondent takes issue with the findings that he violated ME RPC's rules 1.7 and 3.1, contending among other things that the Maine court failed to adequately specify the evidence upon which those violations were found.
Respondent also disputes the findings that he violated ME RPC 3.7(a) because the court failed to address whether the rule 3.7(a)(3) exception applied—specifically, whether the "disqualification of the lawyer would work substantial hardship on the client." If the exception applied, "there is no basis to conclude Respondent's filing [J.C.'s federal action] would constitute a violation of" the New York Rules of Professional [Conduct]" (22 NYCRR 1240.13[b][3]).
Respondent argues that the other offensive conduct by which he was found to have violated ME RPC 8.2(a) is not sufficiently detailed in the Maine court's decision (22 NYCRR 1240.13[b][2], [3]). Respondent also claims that the finding that he violated ME RPC 4.4(a) would not have been misconduct in New York. Rule 4.4(a) prohibits using "means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person." Respondent further contends that his email to ADA H.S. did not accuse her of having committed a crime, rather it "merely informed her that [r]espondent had reason to believe that she or others had tampered with evidence and gave her a chance to explain herself."
With respect to the confrontation with ADA M.R., while respondent may not have acted appropriately, respondent similarly argues that conduct would not have constituted misconduct in New York (22 NYCRR 1240.13[b][3]) and, moreover, the decision and order made no finding of fact which would allow this Court to find a violation of the New York Rules of Professional Conduct (id.).
Respondent maintains that the Maine court's findings that he violated ME RPC's rules 8.4(a) and 8.4(d) are also infirm because his statements criticizing the court video shown at arraignments were protected speech under the First Amendment, the pro se motions to dismiss that he drafted for his former clients were not before the disciplinary judge, nor is there evidence as to how the criminal court adjudicated them, and the disciplinary judge failed to describe with sufficient specificity his finding that respondent behaved unprofessionally toward other attorneys (22 NYCRR 1240.13[b][2], [3]).
As to sanction, respondent maintains that it would be unjust discipline for this Court to impose reciprocal [*7]discipline because, among other things: he is 62 years old and has practiced law in New York for over 32 years without "disciplinary incident"; he has been subjected to multiple suspensions in Maine after less than 10 months of practice in that state; and Maine prosecutors exhibited personal animus toward him as evidenced by, among other things, their filing of at least 11 disciplinary complaints against him.
The AGC maintains in reply that respondent does not address the defenses enumerated at 22 NYCRR 1240.13(b). The AGC also argues that respondent's position that the Maine court's misconduct findings are not sufficiently supported by the record is belied by the transcript of the five-day hearing. Further, the AGC argues that respondent has failed "to present any compelling reason why the imposition of reciprocal discipline would be unjust."
Although respondent asserts defenses under 22 NYCRR 1240.13(b) and (c), none are available to him because: he received notice of the charges against him and was afforded hearing at which respondent testified and "examined witnesses forcefully, but respectfully"; the misconduct findings are sufficiently supported by the disciplinary judge's decisions and the hearing transcript; and respondent's misconduct in Maine would constitute misconduct in New York in violation of Rules of Professional Conduct rules 1.1(a), 1.7(a), 3.1(a), 3.7(a), 3.3(f)(2), 4.4(a), 8.2(a), 8.4(d), and 8.4(h).
With respect to sanction, as a general rule this Court defers to the sanction imposed by the jurisdiction in which the charges were originally brought because the foreign jurisdiction has the greatest interest in fashioning sanctions for misconduct (see Matter of Milara, 194 AD3d at 111; Matter of Tabacco, 171 AD3d 163 [1st Dept 2019]; Matter of Blumenthal, 165 AD3d 85 [1st Dept 2018]). Only rarely does this Court depart from the general rule (see Matter of Karambelas, 203 AD3d 75 [1st Dept 2022]; Matter of McHallam, 160 AD3d 89 [1st Dept 2018]). This is such an instance.
The three-year suspension imposed by the Maine court does not reasonably align with this Court's precedent involving arguably comparable misconduct, which has generally resulted in suspensions ranging from three months to one year (see e.g. Matter of Levy, 231 AD3d 62 [1st Dept 2024]; Matter of Dahiya, 230 AD3d 72 [1st Dept 2024]; Matter of Sofer, 212 AD3d 145 [1st Dept 2023]; Matter of Steinberg, 167 AD3d 206 [1st Dept 2018], appeal dismissed 33 NY3d 1043 [2019]; Matter of Giorgini, 166 AD3d 43 [1st Dept 2018], lv dismissed in part, denied in part 32 NY3d 1134 [2019]; Matter of Linn, 163 AD3d 120 [1st Dept 2018]).
The AGC cites Matter of Savitt (170 AD3d 24 [1st Dept 2019], appeal dismissed 33 NY3d 1118 [2019]) in which this Court imposed a three-year suspension for, among other things, frivolous and harassing litigation in four civil actions and unsupported personal attacks against two judges for which Savitt was sanctioned over $46,000. Significant aggravation [*8]included failure to pay the sanctions and frivolous litigation conduct in the disciplinary proceeding. Contrary to the AGC's position, respondent's misconduct does not rise to level in Savitt.
Based on the above precedent, a three-year suspension would be excessive. Respondent has never been the subject of discipline, either publicly or privately, during his 32 years of practice in New York. A one-year suspension is the appropriate reciprocal discipline as it takes into account the seriousness of the Maine court's misconduct findings, respondent's pattern of misconduct, and his lack of remorse; it is, furthermore, in reasonable accord with the relevant precedent (see e.g. Matter of Sofer, 212 AD3d 145; Matter of Steinberg, 167 AD3d at 206; Matter of Linn, 163 AD3d at 120).
Accordingly, the motion should be granted and respondent suspended from the practice of law for a period of one year, effective 30 days from the date of this order, and until further order of this Court.
All concur.
Wherefore, it is Ordered that the motion by the Attorney Grievance Committee for the First Judicial Department for reciprocal discipline, pursuant to Judiciary Law § 90(2) and 22 NYCRR 1240.13, is granted, and respondent, Scott Lloyd Fenstermaker, is suspended from the practice of law for a period of one year, effective 30 days from the date of this order, and until further order of this Court; and
It is further Ordered that, pursuant to Judiciary Law § 90, during the period of suspension, respondent, Scott Lloyd Fenstermaker, is commanded to desist and refrain from (1) the practice of law in any form, either as principal or agent, clerk or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and
It is further Ordered that, during the period of suspension, respondent, Scott Lloyd Fenstermaker, shall comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15), which are made part hereof; and
It is further Ordered that if respondent, Scott Lloyd Fenstermaker, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith.
Entered: May 13, 2025

Footnotes

Footnote 1: By March 21, 2023 order, the U.S. District Court for the District of Maine immediately suspended respondent based on the Maine court's interim suspension order.

Footnote 2: In November 2022, the MCILS suspended respondent, making him ineligible to represent defendants as a court appointed attorney.