Deutsche Bank Natl. Trust Co. v LeTennier (2026 NY Slip Op 00040)

Deutsche Bank Natl. Trust Co. v LeTennier

2026 NY Slip Op 00040

Decided on January 8, 2026

Appellate Division, Third Department

Fisher, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 8, 2026

CV-23-0713

[*1]Deutsche Bank National Trust Company, as Trustee, Respondent,
vJean LeTennier, Also Known as Jean Michel LeTennier and Jean M. LeTennier, Appellant, et al., Defendants.

Calendar Date:October 16, 2025

Before: Aarons, J.P., Reynolds Fitzgerald, Ceresia, Fisher and McShan, JJ.

Joshua A. Douglass, Millerton, for appellant.
Hinshaw & Culbertson LLP, New York City (Ellis M. Oster of counsel), for respondent.

Fisher, J.
(1) Appeal from an order of the Supreme Court (Brian Burns, J.), entered March 31, 2023 in Delaware County, which, among other things, denied defendant Jean LeTennier's motion to vacate a prior order, (2) appeal from an order of said court, entered August 16, 2024 in Delaware County, which, among other things, granted plaintiff's cross-motion to require defendant Jean LeTennier to file all future applications to the court by an order to show cause, (3) appeal from an order of said court, entered September 24, 2024 in Delaware County, which, among other things, declined to sign an order to show cause, and (4) motion to dismiss the appeal, strike certain portions of the briefs, record and appendix, and for sanctions.
In August 2006, defendant Jean LeTennier (hereinafter defendant) executed a note to borrow a certain sum from Nexus Financial LLC. Such note was secured by a mortgage on real property located in Delaware County. Defendant defaulted on his obligations under the note and plaintiff commenced this mortgage foreclosure action in March 2018. Defendant answered and asserted numerous affirmative defenses and counterclaims, notably challenging plaintiff's standing to commence this action. Both parties then moved for summary judgment, and Supreme Court (Northrup Jr., J.), finding that plaintiff established standing by physical delivery of the note prior to commencement of this action and defendant failed to demonstrate any bona fide defense to this foreclosure, granted plaintiff's motion and denied defendant's cross-motion. Defendant appealed from such order and this Court affirmed (189 AD3d 2022, 2025 [3d Dept 2020]).
Thereafter, defendant filed several pro se motions to renew, reargue or vacate the order granting summary judgment to plaintiff, as well as to compel certain disclosure from plaintiff. Supreme Court (Burns, J.) denied these motions, and ultimately issued an order confirming the referee's report and granting a judgment of foreclosure and sale to plaintiff. Defendant filed at least four additional motions seeking similar relief, the last of which sought vacatur pursuant to CPLR 5015, claiming that newly discovered evidence and alleged fraud used by plaintiff to procure the prior orders/judgment warranted dismissal of the complaint. Supreme Court denied such motion in March 2023, finding that defendant had engaged in frivolous conduct and warning him that continued frivolous conduct may result in financial sanctions (hereinafter the March 2023 order). Defendant then moved to meet with Supreme Court ex parte in chambers and for a forensic accounting,[FN1] and plaintiff cross-moved to strike certain documents filed by defendant and for other related relief. Supreme Court denied defendant's motion and granted plaintiff's cross-motion in an August 2024 decision, striking over 20 documents filed by defendant,[FN2] finding him to be a vexatious litigant that must bring future motions by order to show cause, and awarding costs and legal fees to plaintiff [*2]for defendant's frivolous conduct (hereinafter the August 2024 order). Defendant filed three more motions for previously sought relief; Supreme Court denied each motion in September 2024, with the last being September 24, 2024 (hereinafter the September 2024 order). Defendant appeals from the March 2023 order, the August 2024 order and the September 2024 order.
Initially, the merits of this appeal are unremarkable in nature. Relating to defendant's challenge of the March 2023 order, "[a] trial court may relieve a party from a judgment or order on the basis of newly-discovered evidence which would probably have produced a different result and which could not have been discovered in time [before disposition] or on the basis of fraud, misrepresentation, or other misconduct of an adverse party" (HSBC Bank USA, N.A. v Sage, 143 AD3d 1214, 1215 [3d Dept 2016] [internal quotation marks, ellipsis and citations omitted]). In doing so, "[a] party seeking relief from a judgment upon the ground of newly discovered evidence bears the burden of demonstrating that such proof could not have been discovered sooner through the exercise of due diligence" (Matter of Romine v New York Pub. Serv. Commn., 209 AD3d 1197, 1198 [3d Dept 2022] [internal quotation marks and citations omitted], appeal dismissed 39 NY3d 1060 [2023]). Here, defendant offered certain evidence from the US Securities and Exchange Commission (hereinafter SEC) and the agencies associated with the Secretary of State in California and New York, but failed to demonstrate why this evidence was not available or could not, with due diligence, have been discovered at the time that he opposed plaintiff's motion for summary judgment (see Wall St. Mtge. Bankers, Ltd. v Rodgers, 148 AD3d 1088, 1089 [2d Dept 2017]; HSBC Bank USA, N.A. v Sage, 143 AD3d at 1215). Indeed, the certificate from California indicated it was issued more than a year before summary judgment was granted, and the correspondence from the SEC indicated the records were also publicly available online — which information proffered by defendant on this motion was from 2007-2008. As to his allegations of fraud and other misconduct on the part of plaintiff, such contentions are conclusory and otherwise unsupported by the record (see Carlson v Dorsey, 161 AD3d 1317, 1320 [3d Dept 2018]; Wells Fargo, N.A. v Levin, 101 AD3d 1519, 1521 [3d Dept 2012], lv dismissed 21 NY3d 887 [2013]). Nevertheless, the gravamen of defendant's contentions distill to another challenge to plaintiff's standing to maintain this action, which this Court has already addressed and remains the law of the case (see 189 AD3d at 2024-2025).[FN3] Since defendant failed to raise any challenge concerning the August 2024 order or the September 2024 order in his initial brief, his appeals from such orders are deemed abandoned (see Matter of Shannon, 240 AD3d 1021, 1022 [3d Dept 2025]; Amici v Mazza, 234 AD3d 1170, 1172 n 2 [3d Dept 2025], lv denied 44 NY3d 902 [2025]).
Where this appeal [*3]becomes unconventional, however, is that defendant's opening brief cites six cases which do not exist. Plaintiff identified these fabricated cases as possibly being the product of artificial intelligence (hereinafter AI), and moved for an order seeking, among other things, sanctions against defendant and defense counsel. Defendant claimed the nonexistent cases were citation or formatting errors that he would correct in his reply brief, and then opposed the motion for sanctions with more fake cases and interpretations for existing cases that are at best strenuously attenuated, and at worst entirely inapposite. Defendant's subsequent reply brief acknowledged that his "citation of fictitious cases is a serious error" and that they are "problematic," but failed to offer any corrections or further explanation as previously stated. He then proceeded to include more fake cases and false legal propositions in two subsequent letters to this Court that requested judicial notice of a bankruptcy stay. In examining the propriety of defendant's previously filed papers, more nonexistent cases were discovered in a motion that granted affirmative relief to defendant. Defense counsel reluctantly conceded during oral argument that he used AI in the preparation of his papers and, although he told the Court that he checked his papers, the filings themselves demonstrate otherwise. In total, defendant's five filings during this appeal include no less than 23 fabricated cases, as well as many other blatant misrepresentations of fact or law from actual cases.
Although other state and federal courts have had the occasion to address the misuse of AI in legal papers, this Court has not yet had that opportunity. In doing so, we recognize that, as did the shift from digest books to online legal databases, generative artificial intelligence (hereinafter GenAI) represents a new paradigm for the legal profession, one which is not inherently improper, but rather has the potential to offer benefits to attorneys and the public — particularly in promoting access to justice, saving costs for clients and assisting courts with efficient and accurate administration of justice (see Wadsworth v Walmart Inc., 348 FRD 489, 492-493 [D Wyo 2025]; Mata v Avianca, Inc., 678 F Supp 3d 443, 448 [SD NY 2023]).[FN4] At the same time, attorneys and litigants must be aware of the dangers that GenAI presents to the legal profession. At the forefront of that peril are AI "hallucinations," which occur when an AI database generates incorrect or misleading sources of information due to a "variety of factors, including insufficient training data, incorrect assumptions made by the model, or biases in the data used to train the model" (What are AI Hallucinations?, https://cloud.google.com/discover/what-are-ai-hallucinations [last accessed Jan. 6, 2026]; see generally United States v Google LLC, ___ F Supp 3d ___, ___, 2025 WL 2523010, *15, 2025 US Dist LEXIS 170459, *74 [D DC, Sept. 2, 2025, Nos. 20-cv-3010 (APM[*4]), 20-cv-3715 (APM)]).[FN5] Hallucinated cases may look like a real case because they include familiar-looking reporter information, but their citations lead to cases with different names, in different courts and on different topics — or even to no case at all (see Sanders v United States, 176 Fed Cl 163, 168-169 [Fed Cl 2025]). Even where GenAI provides accurate case citations, it nonetheless may misrepresent the holdings of the cited cases — often in favor of the user supplying the query (see Green Bldg. Initiative, Inc. v Peacock, 350 FRD 289, 292 [D Ore 2025]; Kruglyak v Home Depot U.S.A., Inc., 774 F Supp 3d 767, 770 [WD Va 2025]; see also Matter of Richburg, 671 BR 918, 924 n 11 [Bankr D SC 2025]).[FN6]
Courts throughout the country which have been confronted with AI-generated authorities have concluded that filing papers containing hallucinated cases and fabricated legal authorities may be sanctionable (see generally OTG New York, Inc. v OTTOGI Am., Inc., 2025 WL 2671460, *2-3, 2025 US Dist LEXIS 183358, *7-8 [D NJ, Sept. 18, 2025, No. 24-cv-07209 (BRM) (JRA)]). This includes where the fake citations stand for accurate legal principles (see Ader v Ader, 87 Misc 3d 1213[A], *2 [Sup Ct, NY County 2025]; see also United States v McGee, ___ F Supp 3d ___, ___, 2025 WL 2888065, at *7, 2025 US Dist LEXIS 201350, *19; Johnson v Dunn, 2025 WL 2086116, *16, US Dist LEXIS 141805, *45-46 [ND Ala, July 23, 2025, No. 2:21-cv-1701-AMM]), as there are many harms associated with the submission of fake cases that extend beyond merely wasting the time and money of the opposing party, but also in taking up the court's resources to evaluate and resolve the deception (see Mata v Avianca, Inc., 678 F Supp 3d at 448).
In New York, courts have discretion to award costs or impose financial sanctions against an attorney or party for engaging in frivolous conduct (see 22 NYCRR 130-1.1 [a], [b]; WFE Ventures, Inc. v GBD Lake Placid, LLC, 197 AD3d 824, 836 [3d Dept 2021]). "[C]onduct is frivolous if: (1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law; (2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or (3) it asserts material factual statements that are false" (22 NYCRR 130-1.1 [c]). "In determining whether the conduct undertaken was frivolous, the court shall consider, among other issues the circumstances under which the conduct took place, including the time available for investigating the legal or factual basis of the conduct, and whether or not the conduct was continued when its lack of legal or factual basis was apparent, should have been apparent, or was brought to the attention of counsel or the party" (22 NYCRR 130-1.1 [c]; see Matter of Minister, Elders & Deacons of Refm. Prot. Dutch Church of City of N.Y. v 198 Broadway, 76 NY2d 411, 414 [1990]). Moreover, rule 3.3 of the Rules of Professional [*5]Conduct provides that "[a] lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer" (Rules of Prof Conduct [22 NYCRR 1200.0] rule 3.3 [a] [1]). Sanctions may be appropriate for frivolous and meritless appeals (see Bell v State of New York, 96 NY2d 811, 812 [2001]), and are a common consequence for misuses of judicial process which unnecessarily divert "the time and attention of . . . [the] Judges of this State" (Matter of Minister, Elders & Deacons of Refm. Prot. Dutch Church of City of N.Y. v 198 Broadway, 76 NY2d at 415; see generally Engel v CBS, Inc., 93 NY2d 195, 207 [1999]; Mata v Avianca, Inc., 678 F Supp 3d at 448).
Here, defendant submitted at least 23 fabricated legal authorities across five filings during the pendency of this appeal.[FN7] He has also misrepresented the holdings of several real cases as being dispositive in his favor — when they were not.[FN8] It is axiomatic that submission of fabricated legal authorities is completely without merit in law and therefore constitutes frivolous conduct (see 22 NYCRR 130-1.1 [c] [1]). It cannot be said that fabricated legal authorities constitute "existing law" so as to provide a nonfrivolous ground for extending, modifying or reversing existing law (see 22 NYCRR 130-1.1 [c] [1]; see generally Wadsworth v Walmart Inc., 348 FRD at 495; Mata v Avianca, Inc., 678 F Supp 3d at 461). Defense counsel acknowledged during oral argument that the papers were his own, and, nevertheless, "[b]y signing a paper, an attorney or party certifies that, to the best of that person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances . . . the presentation of the paper or the contentions therein are not frivolous" (22 NYCRR 130-1.1a [b] [1]). However, the excuse for fabricated legal authorities offered by defendant in his papers is incredible. Moreover, during oral argument defense counsel estimated that 90% of the citations he used were accurate, which, even if it were true, is simply unacceptable by any measure of candor to any court (see Rules of Prof Conduct [22 NYCRR 1200.0] rule 3.3 [a] [1]). Where we are most troubled is that more than half of the fake cases offered by defendant came after he was on notice of such issue, whereby his reliance on fabricated legal authorities grew more prolific as this appeal proceeded — despite it being apparent to him that such conduct lacked a legal basis (see Ader v Ader, 87 Misc 3d 1213[A], *1; see also 22 NYCRR 130-1.1 [c]; Rules of Prof Conduct [22 NYCRR 1200.0] rule 3.3 [a] [1]). Rather than taking remedial measures or expressing remorse, defense counsel essentially doubled down during oral argument on his reliance of fake legal authorities as not "germane" to the appeal.[FN9]
Turning to the appropriate sanction, courts must consider that sanctions are both retributive, in that they punish past conduct[*6], but are also "goal oriented, in that they are useful in deterring future frivolous conduct not only by the particular parties, but also by the [b]ar at large" (Levy v Carol Mgt. Corp., 260 AD2d 27, 34 [1st Dept 1999]). In doing so, courts around the country have imposed sanctions ranging from warnings to tens of thousands of dollars to attorneys who have submitted AI hallucinated legal authorities and false propositions (see e.g. Cojom v Roblen, LLC, 2025 WL 3205930, *4, 2025 US Dist LEXIS 225325, *9-10 [D Conn, Nov. 17, 2025, No. 3:23-CV-1669 (JCH)] [involving three nonexistent cases; total sanction $500]; Hall v Academy Charter Sch., 2025 WL 2256653, *5-6, 2025 US Dist LEXIS 152628, *14-16[ED NY, Aug. 7, 2025, No. 2:24-cv-08630-JMW] [involving three nonexistent cases; warning]; Lacey v State Farm Gen. Ins. Co., 2025 WL 1363069, *5, 2025 US Dist LEXIS 90370, *13 [CD Cal, May 5, 2025, No. CV 24-5205 FMO (MAAx)] [involving nine incorrect citations and two authorities that did not exist by attorneys in two law firms; total sanctions $31,100]). Such broad range reflects a constellation of factors surrounding the conduct of the attorney or party offering such fabricated legal authorities, including the number of fake cases or propositions, whether there were fake quotes, if the submitter continued to use or create more fabricated authorities across other filings in the same proceeding after being on notice of the misconduct, there was an admission of the error, there was remorse and the extent of the impact that the fabricated legal authorities had on the proceedings. Considering these factors, courts in cases involving comparable misconduct by defense counsel have imposed significant sanctions (see e.g. Noland v Land of the Free, L.P., 114 Cal App 5th 426, 449, 336 Cal Rptr 3d 897, 912 [Cal Ct App 2025] [involving 21 fabricated case citations and quotations by attorney; total sanction $10,000]; Mid Cent. Operating Engrs. Health & Welfare Fund v HoosierVac LLC, 2025 WL 1511211, *2, 2025 US Dist LEXIS 100748, *3-4 [SD Ind, May 28, 2025, No. 2:24-cv-00326-JPH-MJD] [involving six nonexistent cases across multiple filings; total sanction $6,000]; Kruse v Karlen, 692 SW3d 43, 50-54 [Mo Ct App 2024] [involving 22 fabricated case citations and multiple statutory misstatements by attorney; total sanction $10,000]).
Accordingly, recognizing this as the first appellate-level case in New York addressing sanctions for the misuse of GenAI, we find the imposition of a monetary sanction on defense counsel Joshua A. Douglass in the amount of $5,000 to be appropriate under the circumstances, with the further goal of deterring future frivolous conduct by defendant and the bar at large (see Levy v Carol Mgt. Corp., 260 AD2d at 34). To be clear, attorneys and litigants are not prohibited from using GenAI to assist with the preparation of court submissions. The issue arises when attorneys and staff are not sufficiently trained on the dangers of such technology, and instead [*7]erroneously rely on it without human oversight. As with the work from a paralegal, intern or another attorney, the use of GenAI in no way abrogates an attorney's or litigant's obligation to fact check and cite check every document filed with a court. To do otherwise may be sanctionable, depending on the facts and particular circumstances of each case.
Where most cases involving GenAI would conclude here, we turn to plaintiff's further contentions that the appeal itself is frivolous. We find this contention to have merit. Defendant filed no less than seven motions before Supreme Court challenging either the decision granting summary judgment or the judgment of foreclosure and sale — or both. The gravamen of each application related to the issue of standing. The conduct by defendant continued to escalate, culminating in multiple warnings of frivolous conduct by Supreme Court. At one point, defendant filed over 20 irrelevant documents which had to be stricken and resulted in a sanction. Despite being represented by counsel, some of these motions were filed pro se by defendant. The misuse of GenAI represents an escalation in such unabashed misconduct, and the present appeal is a "continuation[ ] of the underlying protracted and frivolous litigation pursued by defendant undeterred by the repeated" warnings and imposition of sanctions by Supreme Court (De Ruzzio v De Ruzzio, 287 AD2d 896, 897 [3d Dept 2001]). As already noted, defendant's contentions on appeal — which this Court previously considered and rejected (189 AD3d at 2024-2025) — "are not ultimately unpersuasive, yet good-faith, arguments requiring our review of existing law, but, rather, part of a continuing effort to delay the [foreclosure] action and harass plaintiff" (De Ruzzio v De Ruzzio, 287 AD2d at 897-898 [internal quotation marks and citation omitted]). Although defense counsel signed the papers filed with this Court, which were uploaded through his NYSCEF account, it is further not unnoticed that the metadata of numerous documents indicate they originated from a program in his client's name. Such result would be consistent with defendant filing papers pro se before Supreme Court, and defense counsel's apparent unfamiliarity during oral argument with certain papers he allegedly filed during the pendency of this appeal. Given the baseless nature of this appeal, and recognizing that sanctions must be goal oriented to deter future conduct to prevent the waste of judicial resources and continued vexatious litigation of specific individuals too (see Levy v Carol Mgt. Corp., 260 AD2d at 34), we conclude that an additional sanction of $2,500 shall be imposed on defense counsel Joshua A. Douglass and $2,500 shall be imposed on defendant Jean LeTennier for pursing this appeal.[FN10] We have examined the remaining contentions of the parties and have found them to be without merit, rendered academic or frivolous.
Aarons, J.P., Reynolds Fitzgerald, Ceresia and McShan, JJ., concur.
ORDERED that the [*8]orders are affirmed, with costs.
ORDERED that plaintiff's motion for sanctions is partially granted, with costs, to the extent that sanctions in the amount of $7,500 are imposed against defendant's counsel Joshua A. Douglass and $2,500 are imposed against defendant Jean LeTennier pursuant to 22 NYCRR 130-1.1, in each case to be paid within 60 days following the date of this order, with proof of payment to be filed with this Court.

Footnotes

Footnote 1: Defendant was represented by present counsel from this point forward, although it appears defendant continued to move pro se.
Footnote 2: Defendant electronically filed various documents with the court, including, among several others, a "Cancellation of Debt," "Notice of Cease and Desist Conditional," "Affirmation of Truth Forma" and a "Notice of Pendency of Action" from the "JMLetennier Irrevocable Family Trust" asserting a lien on the subject property due to a purported lawsuit against defendant. These were some of the documents stricken by Supreme Court.

Footnote 3: Defendant did not seek leave to appeal to the Court of Appeals or otherwise challenge this Court's decision from 2020.

Footnote 4: We find this particularly true as it relates to rural access to justice affecting many parts of New York, as well as throughout the United States.
Footnote 5: It must be recognized that GenAI and AI are not the same thing, and our use of these different terms is intentional (see United States v Google LLC, ___ F Supp 3d at ___, 2025 WL 2523010, at *9, 2025 US Dist LEXIS 170459 at *52-53 [explaining the different types of AI, and that GenAI is a subfield of AI "that uses machine-learning techniques to generate new data, including text, images, sound, code, and other media"]).
Footnote 6: Such outcome is an inherent product of GenAI, in that such "models are designed to maximize the chance of giving an answer, meaning the [model] will be more likely to give an incorrect response than admit it doesn't know something" (Noland v Land of the Free, L.P., 114 Cal App 5th 426, 442, 336 Cal Rptr 3d 897, 911 [Cal Ct App 2025] [internal quotation marks and citation omitted]; see generally United States v Google LLC, ___ F Supp 3d at ___, 2025 WL 2523010, at *15, 2025 US Dist LEXIS 170459 at *71-72; In re Kenney, ___ So3d ___, ___, 2025 WL 2986582, *3 n 5, 2025 La App LEXIS 2023, *7 [La Ct App, 5 Cir, Oct. 23, 2025, No. 25-C-389]).

Footnote 7: As one example, defendant submitted the fake case name "Tishman Realty & Construction Co. v Regan," with an accompanying citation to a New York court, year and proposition that "clarified" a subsection of CPLR 5015 — the central issue in the March 2023 order. However, the provided citation leads us to a case with a different name from Illinois, and the case name is also not found in any reported state or federal case in the United States.
Footnote 8: For instance, defendant submits the real case of Wells Fargo Bank, N.A. v Erobobo (127 AD3d 1176 [2d Dept 2015], lv dismissed 25 NY3d 1221 [2015]) with the false holding "foreclosure void where trust not properly formed"; the Second Department held the opposite.

Footnote 9: The parties were notified that plaintiff's motion for sanctions was to be decided with the appeal. 

Footnote 10: Pursuant to 22 NYCRR 130-1.3, the sanction imposed on defense counsel shall be deposited with the Lawyers' Fund for Client Protection and the sanction imposed on defendant shall be deposited with the Clerk of the Court for transmittal to the Commissioner of Taxation and Finance.