Matter of Zareh (2026 NY Slip Op 00619)

Matter of Zareh

2026 NY Slip Op 00619

Decided on February 10, 2026

Appellate Division, First Department

Per Curiam 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 10, 2026
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Present — Hon. Cynthia S. Kern
Justice Presiding
Tanya R. Kennedy Julio Rodriguez III John R. Higgitt Margaret A. Chan
Justices.
 Motion No. 2025-04518 Case No.2025-05041
 In the Matter of Omid Zareh
an attorney
counselor-at-law: Attorney Grievance Committee for the First Judicial Department
Petitioner
Omid Zareh (OCA Atty. Reg. No. 2763282)
Respondent.

Motion No. 2025-04518|Case No. 2025-05041|

[*1]In the Matter of Omid Zareh, an Attorney and Counselor-at-Law: Attorney Grievance Committee for the First Judicial Department, Petitioner, Omid Zareh (OCA Atty. Reg. No. 2763282), Respondent.

Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Omid Zareh, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the Second Judicial Department on August 21, 1996.

Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Roy E. Chon, of counsel), for petitioner.
Respondent, pro se.

Per Curiam 

Respondent Omid Zareh was admitted to the practice of law in the State of New York by the Second Judicial Department on August 21, 1996. At all times relevant to this proceeding, he has maintained an office for the practice of law within the First Judicial Department (Rules for Atty Disciplinary Matters [22 NYCRR] § 1240.7[a][2]).
In the course of opposing a motion to dismiss a complaint in litigation venued in the United States District Court for the Northern District of Texas, respondent, as one of the reviewing attorneys representing plaintiff, submitted a brief that contained numerous citation errors and repeatedly misrepresented case law for propositions it did not support, leading defense counsel to assert in reply that the brief had been drafted using artificial intelligence (AI). Counsel acknowledged the errors contained in their brief, apologized for them, and attributed the errors to "mistakes, . . . a lack of familiarity amongst counsel, siloed research and knowledge, and poor integration of the work product of multiple attorneys."
Because this could have explained the typographical errors and misquoted law in the brief but did not adequately explain how the misstated legal principles and incongruous citations were drafted in the first place, the District Court ordered counsel to show cause in writing "why they should not be sanctioned for violating Federal Rule of Civil Procedure 11 and Texas Disciplinary Rule of Professional Conduct 3.03" for the misrepresentations. The District Court independently found that ChatGPT described at least one of the cited cases in the same erroneous manner as counsel, supporting a conclusion that given the "type and trend of error," they were AI-generated. Counsel, including respondent, admitted that they did not review or verify each of the citations and thus could not explain how the drafting process could have led to false case citations and the recitation of unsupported legal propositions, leading the District Court to conduct a hearing on the matter at which respondent conceded that he had failed in adequately supervising the drafting attorney.
Further, the District Court found that the only explanation offered — that a "grid" of cases maintained by the drafting associate overseen by respondent became degraded as he deleted cases in the course of funneling his research — was insufficient to explain how the brief came to contain internally inconsistent citations to the same cases, and could not logically have produced the types of errors identified by the District Court, many instances of which formed the sole support for the legal propositions advanced in plaintiff's brief. The District Court found the drafting associate's denials of AI use not to be credible and found that the brief was AI-generated.
Moreover, while the District Court did not believe that counsel, including respondent, used AI or knew of its use in the course of preparing the brief, the District Court found that counsel's denial of the use of AI while admitting to not having reviewed the cited cases, and thus being unable to competently explain their appearance in the brief, constituted bad faith. The District Court thus found that counsel, including respondent, presented to the Court an unreviewed AI-drafted brief, thereby violating FRCP 11(b) by failing to "certify[] that to the best of [their] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . [that] the claims, defenses, and other legal contentions therein are warranted by existing law" (FRCP 11[b]), for which the District Court admonished counsel, including respondent.
The Attorney Grievance Committee (AGC) now seeks an order, pursuant to Judiciary Law § 90(2), 22 NYCRR 1240.13, and the doctrine of reciprocal discipline, finding that respondent has been disciplined by a foreign jurisdiction, directing him to demonstrate why discipline should not be imposed in New York for the misconduct underlying his discipline by the United States District Court for the Northern District of Texas, and publicly censuring respondent, or, in the alternative, sanctioning respondent as the Court deems appropriate. Respondent opposes the motion.
In a proceeding seeking reciprocal discipline pursuant to 22 NYCRR 1240.13(b), respondent may raise the following defenses: (1) a lack of notice or opportunity to be heard in the foreign jurisdiction constituting a deprivation of due process; (2) an infirmity of proof establishing the misconduct; or (3) that the misconduct for which the attorney was disciplined in the foreign jurisdiction does not constitute misconduct in this State (see Matter of Milara, 194 AD3d 108, 110 [1st Dept 2021]).
Contrary to respondent's position, none of the 1240.13(b) defenses is available to him because he received sufficient due process in that he was given notice of the AI related allegations; he was afforded three opportunities to address them via the initial July 17, 2024 letter to the District Court containing his sworn declaration, the July 26, 2024 response to the court's order to show cause containing respondent's sworn declaration, and his testimony at the show cause hearing; and the District Court's finding that AI was used to draft the brief at issue was based on, inter alia, its examination of the brief's contents and errors, an adverse credibility determination as to the drafting attorney, and its rejection of respondent's arguments.
Further, the conduct for which respondent was sanctioned as violative of FRCP rule 11(b) would constitute misconduct in violation of the New York Rules of Professional Conduct (22 NYCRR 1200.0) rules 3.1(a) and 3.1(b)(1).[FN1] It is thus of no moment that respondent was initially admonished for violating a civil practice rule as opposed to an attorney conduct disciplinary rule. It is further of no moment that the District Court found that respondent was most likely initially unaware that AI had been used to draft the brief, because the Court nevertheless made clear to respondent that "it was bad faith to file this brief and then to come back and defend it," implicating respondent's actual knowledge in pursuing his course of conduct in light of the successive procedures employed by the District Court.
As to the appropriate sanction, "significant weight should be given to the sanction imposed by the jurisdiction where the misconduct occurred because the foreign jurisdiction has the greatest interest in fashioning sanctions for misconduct" (Matter of Blumenthal, 165 AD3d 85, 86 [1st Dept 2018]; see Matter of Jaffe, 78 AD3d 152, 158 [1st Dept 2010]), and only in rare instances will this Court depart from its general rule (see Matter of Karambelas, 203 AD3d 75, 80-81 [1st Dept 2022]; Matter of McHallam, 160 AD3d 89 [1st Dept 2018]).
A public censure, as requested by the AGC, is the appropriate sanction because it is commensurate with and equivalent to the public reprimand issued by the District Court and is in general accord with precedent involving comparable misconduct absent extremely unusual mitigating circumstances, of which there is no evidence here (see e.g. Matter of Weitzman, 202 AD3d 5 [1st Dept 2021] [censure pursuant to 1240.8(a)(5) for, inter alia, asserting frivolous claims on behalf of clients in violation of rule 3.1(a)]; Matter of Mueller, 194 AD3d 68 [1st Dept 2021] [censure based on reprimand in New Jersey for, inter alia, failure to supervise an associate attorney]; Matter of Vialet, 120 AD3d 91 [1st Dept 2014] [censure based on public reprimand by the Second Circuit for, inter alia, submission of deficient briefs]; Matter of Hsu, 104 AD3d 138 [1st Dept 2013] [same]; Matter of Zhang, 101 AD3d 79 [1st Dept 2012] [same]; Matter of Mundie, 97 AD3d 194 [1st Dept 2012] [same]).
Accordingly, the AGC's motion for reciprocal discipline pursuant to Judiciary Law § 90(2) and 22 NYCRR 1240.13, predicated on similar discipline imposed by the United States District Court for the Northern District of Texas, should be granted to the extent that respondent Omid Zareh is publicly censured.
All concur.
Wherefore, it is Ordered that the motion by the Attorney Grievance Committee for the First Judicial Department for reciprocal discipline, pursuant to Judiciary Law § 90(2) and 22 NYCRR 1240.13, predicated on similar discipline imposed by the United States District Court for the Northern District of Texas, is granted, and respondent, Omid Zareh, is publicly censured.
Entered: February 10, 2026

Footnotes

Footnote 1: New York rules 5.1(b)(2) and 5.1(d)(2)(ii) are also implicated because respondent failed to properly supervise the drafting associate on the brief at issue, as evinced by his admissions during the show cause hearing.