Matter of Julien v Arthur
2026 NY Slip Op 03308
May 27, 2026
Appellate Division, Second Department
Wooten
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Kevin A. Julien, appellant,
v
Danielle M. Arthur, respondent. (Proceeding No. 1)
In the Matter of Danielle M. Arthur, respondent,
Kevin A. Julien, appellant. (Proceeding No. 2)

Supreme Court of the State of New York, Appellate Division, Second Judicial Department
Decided on May 27, 2026
2024-03307, (Docket Nos. V-4283-21,V-4283-21/23B, V-4283-21/23C, V-4709-21,V-4709-21/23B, V-4709-21/23C, O-12667-23, O-12667-23/23A)
Colleen D. Duffy, J.P.
Paul Wooten
Carl J. Landicino
Susan Quirk, JJ.

By order to show cause dated January 14, 2026, this Court directed the parties to show cause before this Court why an order should not be made and entered imposing sanctions and/or costs, if any, as this Court may deem appropriate, against the appellant pursuant to 22 NYCRR 130-1.1 for filing a brief containing fabricated legal authority. The motion was held in abeyance and referred to the panel of Justices hearing the appeal for determination upon the argument or submission thereof.
Kevin A. Julien, Brooklyn, NY, appellant pro se.
Geanine Towers, Brooklyn, NY, for respondent.

APPEAL by the father, in related proceedings pursuant to Family Court Act articles 6 and 8, from an order of the Family Court (Gregory L. Gliedman, J.), dated April 16, 2024, and entered in Kings County. The order, insofar as appealed from, after a hearing, granted the mother's petition for sole legal and residential custody of the parties' child, with certain parental access to the father.
Wooten, J.

[*1]
OPINION & ORDER
This appeal presents this Court with the opportunity to address an emerging issue with broad and significant implications—the usage of generative artificial intelligence (hereinafter GenAI) in drafting appellate briefs—which has the potential to produce misleading or inaccurate information, including citations to nonexistent cases. We hold that the unverified usage of GenAI to draft an appellate brief containing false information constitutes frivolous conduct warranting the imposition of a sanction, even when the offending party is a pro se litigant.
I. Relevant Factual Background
The parties, who were never married, are the parents of a child, born in June 2020. In March 2021, the father filed a petition pursuant to Family Court Act article 6 for parental access with the child, who resided with the mother. In May 2021, the mother filed a petition pursuant to Family Court Act article 6 for sole legal and residential custody of the child. Thereafter, the Family Court issued a temporary order of parental access awarding the father certain parental access with the child.
In June 2023, the mother filed a family offense petition pursuant to Family Court Act article 8, alleging, inter alia, that the father failed to return the child at the end of his scheduled parental access on multiple occasions and that the father assaulted the child's maternal aunt and maternal grandmother in the presence of the child during an exchange of the child for scheduled parental access with the father. In July and August 2023, the father filed petitions pursuant to Family Court Act article 6, alleging that the mother violated the terms of an order of parental access.
On October 12, 2023, the Family Court issued a temporary order of protection in favor of the mother, directing the father, among other things, to stay away from the mother except for court-ordered parental access. In November 2023, the mother filed a petition pursuant to Family Court Act article 8, alleging that the father violated the temporary order of protection dated October 12, 2023.
Commencing on October 12, 2023, the Family Court conducted a consolidated hearing on the parties' petitions. During the hearing, the father testified, inter alia, that the mother failed to produce the child for parental access with the father on multiple occasions. Further, testimony was elicited from the mother that on July 1, 2023, the father assaulted her at a police precinct station house during an exchange of the child. The mother acknowledged that she did not produce the child for subsequent parental access with the father from July 2023 to September 2023 because she was fearful of the father. The mother also testified that when parental access with the father resumed, the father failed to return the child to the mother in September 2023, as he also had done on previous occasions, requiring the mother to file a writ for the child's return.
In an order dated April 16, 2024, made after the hearing, the Family Court, among other things, granted the mother's petition for sole legal and residential custody of the child, with certain parental access to the father. The court determined, inter alia, that (1) the mother had been the primary parent for the child since the child's birth and had provided for the child's needs; (2) the father "has done virtually nothing to ensure that [the child's] needs have been addressed"; (3) the father assaulted the mother in the presence of the child; and (4) the mother had to obtain a writ for the return of the child when the father refused to return the child as ordered. The father appeals.
II. The Father's Appellate Brief
In June 2025, the father, acting pro se, submitted an appellate brief in which he argued that the Family Court was biased against him, that the court's decision relied on "false facts from another case," and that the parental access awarded to him was contrary to the child's best interests.
The father's appellate brief was highly suggestive of having been created with the aid of GenAI in several respects. Most significantly, the father's appellate brief contained a citation to a nonexistent decision purportedly issued by the Appellate Division, First Department, in support of the father's claim of judicial bias. In addition, in four instances the father's appellate brief contained bracketed language stating that "Appellant" was to provide information. For instance, following the father's statement that "the Family Court relied on false facts from another case," the father's appellate brief states "[Appellant to provide specific details of the alleged false facts and the other case]."
In the mother's appellate brief, she argued, among other things, that the father's appellate brief appeared to be the product of GenAI and that his appellate brief included a fictional citation to a nonexistent case. The mother asserted that the father's failure to take any steps to verify that the information and citations he presented to this Court were legitimate constituted frivolous conduct warranting sanctions, including dismissal of the appeal.
On January 14, 2026, by order to show cause, this Court directed the parties to show cause why an order should not be made and entered imposing sanctions and/or costs, if any, as this Court may deem appropriate, against the father pursuant to 22 NYCRR 130-1.1 for filing a brief containing fabricated legal authority. Thereafter, the father submitted an affirmation wherein he acknowledged that "the legal authority in question was extracted from an internet source that appeared genuine." The father stated that "[a]s a self-represented litigant, I utilized these tools to assist in my advocacy, and I mistakenly believed the information provided was accurate and legitimate." The father added an apology to this Court for "wast[ing] the Court's time and resources" through his "total, but misplaced, reliance on the research tools [he] was using" and averred that the filing of his appellate brief was "made in good faith."
The mother has not submitted an affirmation in response to the order to show cause.
III. The Use of GenAI in Drafting Briefs
Courts across the country have recognized the pitfalls posed by the use of GenAI in [*2]drafting briefs and other memoranda without verifying the accuracy of the information generated (see e.g. Smith v Smith, 2025 WL 3706691, *3, 2025 US Dist LEXIS 263592, *7-8 [ND NY, No. 5:25-CV-1077 (MAD/DJS)]; Jarrus v Governor of Michigan, 2025 WL 3146421, *6, 2025 US Dist LEXIS 221984, *17-18 [ED Mich, No. 25-11168-FKB-APP]; OTG New York, Inc. v OTTOGI Am., Inc., 2025 WL 2671460, *2-3, 2025 US Dist LEXIS 183358, *5-6 [D NJ, No. 24-cv-07209 (BRM) (JRA)]; United States v McGee, 806 F Supp 3d 1264, 1269 [SD Ala]; Wadsworth v Walmart Inc., 348 FRD 489, 492-493 [D Wyo]). In particular, courts have noted the risk of GenAI "hallucinations," which may take the form of citations to nonexistent cases, fabricated quotations from actual cases, or misstatements of law that are not representative of what a case actually decided (Braica v Frankowski, 2025 WL 3644231, *5, 2025 US Dist LEXIS 263098, *12 [D Conn, No. 3:24-CV-1709 (VDO)]). The danger posed by GenAI hallucinations lies not merely in their inaccuracy, but also in their tendency to masquerade as a genuine citation or statement of law (see OTG New York, Inc. v OTTOGI Am., Inc., 2025 WL 2671460, *2, 2025 US Dist LEXIS 183358, *5-6), resulting in a waste of time and money to the opposing party "in exposing the deception" and an unnecessary burden on the court's resources (Mata v Avianca, Inc., 678 F Supp 3d 443, 448 [SD NY, No. 22-cv-1461 (PKC)]).
Consequently, various courts have determined that reliance by an attorney or party on GenAI to draft legal memoranda containing GenAI hallucinations constitutes frivolous conduct warranting the imposition of sanctions (see e.g. Fletcher v Experian Info. Solutions, Inc., 168 F4th 231 [5th Cir]; Amarsingh v Frontier Airlines, Inc., 2026 WL 352016, *6-7, 2026 US App LEXIS 3928, *17-20 [10th Cir, No. 24-1391]; Lexos Media IP, LLC v Overstock.com, Inc., 2026 WL 265581, 2026 US Dist LEXIS 20994 [D Kan, No. 22-2324-JAR]; Dubinin v Papazian, 2025 WL 3248187, *3, 2025 US Dist LEXIS 229362, *9-10 [SD Fla, No. 25-CV-23877-RAR]; Mata v Avianca, Inc., 678 F Supp 3d at 466-467). Further, courts have stressed that even pro se litigants, who are typically afforded greater leniency than parties represented by an attorney, may be subject to sanctions for presenting fabricated case citations or misrepresentations resulting from reliance on GenAI (see Button v McCawley, 2026 WL 292150, *4, 2026 US Dist LEXIS 23074, *10 [SD Fla, No. 0:24-cv-60911-LEIBOWITZ/AUGUSTIN-BIRCH] ["(c)ourts in this district have not hesitated to sanction parties, even pro se litigants, for fake or hallucinated citations" (emphasis omitted)]; Kulkarni v Merit Sys. Protection Bd., 2025 WL 3627611, *3, 2025 US App LEXIS 32662, *6 [Fed Cir, No. 2025-1597, 2025-1598] ["(w)hile pro se litigants are understandably held to a less stringent standard than parties represented by counsel, a baseline, common-sense standard nonetheless requires that all parties refrain from citing non-existent case law and quoting non-existent language"]; Braica v Frankowski, 2025 WL 3644231, *5, 2025 US Dist LEXIS 263098, *13-14 [noting that the plaintiff's statement that he failed to verify the accuracy of his submissions containing GenAI hallucinations because he is a pro se party lacking legal training "undermine(s) the capabilities of pro se litigants" (emphasis omitted)]; Moore v City of Del City, 2025 WL 3471341, *3, 2025 US App LEXIS 31411, *8 [10th Cir, No. 25-6002] [warning future litigants, pro se and those represented by counsel alike, of the possibility of sanctions, monetary and otherwise, resulting from "the unscrutinized use of GenAI"]; Anonymous v New York City Dept. of Educ., 2024 WL 3460049, *7, 2024 US Dist LEXIS 127114, *20 [SD NY, No. 1:24-cv-04232 (JLR)] ["(w)ithout question, it is improper and unacceptable for litigants—including pro se litigants—to submit non-existent judicial opinions with fake quotes and citations" (emphasis and internal quotation marks omitted)]).
While this Court has not yet had the opportunity to address the issue of the unverified usage of GenAI to draft briefs and other legal memoranda, other Appellate Departments in New York have confronted the issue. In Dowlah v Professional Staff Congress (PSC-CUNY) (227 AD3d 609, 610), the Appellate Division, First Department, noted that the plaintiff cited several nonexistent cases in a memorandum of law, which the plaintiff acknowledged in a reply brief was the result of "legal software applications" that deploy artificial intelligence (internal quotation marks omitted). While not imposing a sanction, the First Department "caution[ed] plaintiff that his pro se status does not excuse his failure to check the legal citations that he offers to a court" (id.).
Further, in NewRez LLC v Morton (242 AD3d 416), the First Department declined to impose a sanction on the defendant for citing to four nonexistent cases. The First Department reasoned that "[a]lthough such citations should generally warrant sanctions, and a party's pro se status should not render the party immune, in this instance the Court is mindful to afford leniency to the pro se defendant" (id. at 417).
Also of note, in Matter of Zareh (_____ AD3d _____, 2026 NY Slip Op 00619), the First Department determined, in the context of an attorney disciplinary proceeding, that a public censure was an appropriate sanction for an attorney who submitted a brief containing citation errors and misrepresentations of case law, which was determined to have been drafted using GenAI.
In contrast to the First Department's decisions, which did not impose monetary sanctions for the submission of materials containing GenAI hallucinations, the Appellate Division, Third Department, in Deutsche Bank Natl. Trust Co. v LeTennier (_____ AD3d _____, 2026 NY Slip Op 00040), granted the plaintiff's motion, inter alia, to impose sanctions against the defendant and the defendant's attorney for submitting a brief containing fabricated cases believed to be the result of GenAI (see Deutsche Bank Natl. Trust Co. v LeTennier, _____ AD3d at _____, 2026 NY Slip Op 00040, *8). In that case, the defendant submitted a brief containing citations to six nonexistent cases. The Third Department noted that in response to the plaintiff's motion, among other things, to sanction the defendant and the defendant's attorney, the defendant "claimed the nonexistent cases were citation or formatting errors that he would correct in his reply brief, and then opposed the motion for sanctions with more fake cases and interpretations for existing cases that are at best strenuously attenuated, and at worse entirely inapposite" (Deutsche Bank Natl. Trust Co. v LeTennier, _____ AD3d at _____, 2026 NY Slip Op 00040, *3). The defendant then submitted a reply brief that "failed to offer any corrections or further explanation" (Deutsche Bank Natl. Trust Co. v LeTennier, _____ AD3d at _____, 2026 NY Slip Op 00040, *3). Following the submission of his reply brief, the defendant submitted two letters to the Third Department containing "more fake cases and false legal propositions" (Deutsche Bank Natl. Trust Co. v LeTennier, _____ AD3d at _____, 2026 NY Slip Op 00040, *3). The Third Department noted that the defendant's attorney "reluctantly conceded during oral argument that he used AI in the preparation of his papers" (Deutsche Bank Natl. Trust Co. v LeTennier, _____ AD3d at _____, 2026 NY Slip Op 00040, *3). In total, the defendant's multiple filings during the appeal included "23 fabricated cases, as well as many other blatant misrepresentations of fact or law from actual cases" (Deutsche Bank Natl. Trust Co. v LeTennier, _____ AD3d at _____, 2026 NY Slip Op 00040, *3).
The Third Department, in Deutsche Bank Natl. Trust Co. v LeTennier, determined that the "submission of fabricated legal authorities is completely without merit in law and therefore constitutes frivolous conduct" pursuant to 22 NYCRR 130-1.1(c)(1) (Deutsche Bank Natl. Trust Co. v LeTennier, _____ AD3d at _____, 2026 NY Slip Op 00040, *5). The Third Department noted that it was "most troubled" by the fact that "more than half of the fake cases offered by defendant came after he was on notice of such issue, whereby his reliance on fabricated legal authorities grew more prolific as this appeal proceeded—despite it being apparent to him that such conduct lacked a legal basis" (Deutsche Bank Natl. Trust Co. v LeTennier, _____ AD3d at _____, 2026 NY Slip Op 00040, *5 [emphasis omitted]). In assessing the appropriate sanction, the Third Department stated that relevant factors to consider included "the conduct of the attorney or party offering such fabricated legal authorities, including the number of fake cases or propositions, whether there were fake quotes, if the submitter continued to use or create more fabricated authorities across other filings in the same proceeding after being on notice of the misconduct, there was an admission of the error, there was remorse and the extent of the impact that the fabricated legal authorities had on the proceedings" (Deutsche Bank Natl. Trust Co. v LeTennier, _____ AD3d at _____, 2026 NY Slip Op 00040, *6). The Third Department concluded that it was appropriate to impose a monetary sanction on the defendant's attorney in the sum of $5,000 for the use of erroneous reliance on GenAI "without human oversight" (Deutsche Bank Natl. Trust Co. v LeTennier, _____ AD3d at _____, 2026 NY Slip Op 00040, *7). The Third Department also imposed an additional sanction of $2,500 on the defendant's attorney (for a total sanction of $7,500) and $2,500 on the defendant due to the "baseless nature of th[e] appeal" (Deutsche Bank Natl. Trust Co. v LeTennier, _____ AD3d at _____, 2026 NY Slip Op 00040, *7).
IV. Sanctions for Frivolous Conduct in this Case
"Pursuant to 22 NYCRR 130-1.1(a), a court may impose financial sanctions upon any party or attorney in a civil action or proceeding who engages in frivolous conduct" (Aretakis v CPEX Real Estate, LLC, 246 AD3d 691, 693). "Conduct is frivolous if: (1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law; (2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or (3) it asserts material factual statements that are false" (id. [internal quotation marks omitted]; see 22 NYCRR 130-1.1[c]).
Here, by filing an appellate brief citing to a nonexistent case as the sole support for his claim of judicial bias, the father engaged in conduct that was "completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law" (22 NYCRR 130-1.1[c][1]; see Deutsche Bank Natl. Trust Co. v LeTennier, _____ AD3d at _____, 2026 NY Slip Op 00040, *5), and that involved the assertion of "material factual statements that are false" (22 NYCRR 130-1.1[c][3]). Thus, the father's reliance on GenAI, without taking the time to verify that the limited number of cases in his appellate brief stood for the propositions cited, let alone were actually in existence, constituted frivolous conduct.
The more difficult question before this Court is the appropriate sanction to impose on the father for engaging in frivolous conduct. The circumstances of this case are far less egregious than those in Deutsche Bank Natl. Trust Co. v LeTennier, as the father cited only 1 nonexistent case in contrast to the 23 fabricated cases cited in LeTennier over the course of multiple filings. Moreover, in contrast to LeTennier, once the father was alerted to the issue, he did not persist in citing to nonexistent cases and readily acknowledged his misplaced reliance on GenAI. In addition, whereas the defendant in LeTennier was represented by counsel, the father in this case is acting pro se.
Nevertheless, the mere fact that the father's conduct was not as egregious as that of the defendant in LeTennier does not obviate the need for a sanction. The failure to verify even a single GenAI citation to a fictitious case may warrant the imposition of sanctions to account for the unnecessary waste of resources of the Court and of opposing parties (see Grymes Dev. Co. v Fodera, 88 Misc 3d 767 [Sup Ct, Richmond County]). Further, the mere fact of a party's pro se status "does not excuse [the party's] failure to check the legal citations" presented to the Court (Dowlah v Professional Staff Congress [PSC-CUNY], 227 AD3d at 610). Moreover, the imposition of a sanction for frivolous conduct serves not only to punish a party for the offending conduct, but also to deter future frivolous conduct by other pro se litigants and attorneys (see Deutsche Bank Natl. Trust Co. v LeTennier, _____ AD3d at _____, 2026 NY Slip Op 00040, *5-6; Leggio v Leggio, 183 AD2d 815, 816).
Under the circumstances presented, and taking into account the father's acknowledgment of responsibility for his conduct without further reoccurrence, we deem it appropriate to impose a monetary sanction in the sum of $250. We also caution the father that any misuse of GenAI in future filings may result in a greater sanction.
V. Merits of the Appeal
Turning to the merits of the instant appeal, we determine that the Family Court properly granted the mother's petition for sole legal and residential custody of the child, with certain parental access to the father. We note that in reaching this determination, we have not drawn any unfavorable inference against the father as the result of his reliance on GenAI in drafting his appellate brief.
"The paramount concern in matters of custody and parental access is the best interests of the child under the totality of the circumstances" (Matter of Navarro v Clarke, 232 AD3d 797, 798 [internal quotation marks omitted]). "Since the Family Court's determination with respect to custody and parental access depends to a great extent upon its assessment of the credibility of the witnesses and upon the character, temperament, and sincerity of the parties, its findings are generally accorded great deference and will not be disturbed unless they lack a sound and substantial basis in the record" (Matter of Freyer v Macruari, 234 AD3d 755, 756 [internal quotation marks omitted]; see Matter of Watling v Watling, 236 AD3d 1047, 1048).
Here, the Family Court's determination that an award of sole legal and residential custody of the child to the mother was in the child's best interests has a sound and substantial basis in the record. Accepting the court's credibility determinations, the evidence presented at the hearing showed, inter alia, that the mother, who has been the child's primary caretaker since birth, was better suited to promote stability in the child's life than the father and that the mother was the parent most likely to foster the other parent's relationship with the child (see Matter of Diaz v Vicente, 241 AD3d 1559, 1560; Matter of Steward v Okon, 238 AD3d 1055, 1057). Moreover, the evidence elicited at the hearing showed that the father assaulted the mother in the presence of the child during an exchange of the child and that on other occasions, the father refused to return the child to the mother at the end of his scheduled parental access (see Matter of Diaz v Vicente, 241 AD3d at 1560-1561; Matter of Sookchan v Sookchan, 234 AD3d 779, 781).
The father's contention that the Family Court relied on "false facts" that were not [*3]supported by the record is without merit. The only examples of purportedly "false facts" articulated by the father are the court's finding that the father provided "little support, financial or otherwise" for the child and the court's "reference to an assault and a writ for [the child's] return." Contrary to the father's contention, however, those findings were based upon testimony elicited at the hearing. The mother testified at the hearing, among other things, that from the time the child was born, the father did not provide financial support "consistently that can take care of the child." For instance, the mother indicated that the father gave her only $25 for the child's care in 2020. Moreover, the mother described in detail the incident in which the father assaulted her in the presence of the child on July 1, 2023, and testified that she had to obtain a writ for the return of the child in September 2023. The court was in the best position to evaluate the testimony elicited at the hearing, and we perceive no basis on this record to disturb the court's credibility findings (see Matter of Calogero v McMahon, 232 AD3d 894, 895).
Furthermore, the Family Court providently exercised its discretion in setting the father's parental access schedule, which is supported by a sound and substantial basis in the record (see Matter of Steward v Okon, 238 AD3d at 1057-1058; Matter of Krubally v Jobe, 161 AD3d 1076, 1077).
The father's contention that the Family Court was biased against him is unpreserved for appellate review. "A party claiming court bias must preserve an objection and move for the court to recuse itself" (Matter of Baby Girl Z. [Yaroslava Z.], 140 AD3d 893, 894; see Matter of George A.C. [Anthony C.], 223 AD3d 798, 800). "In any event, when a claim of bias is raised, the inquiry on appeal is limited to whether the court's bias, if any, unjustly affected the result to the detriment of the complaining party" (Matter of George A.C. [Anthony C.], 223 AD3d at 800 [internal quotation marks omitted]; see Matter of Hossain v Chowdhury, 238 AD3d 751, 753). Here, the record demonstrates that the court listened to the testimony, treated the parties fairly, and did not have a predetermined outcome of the case in mind during the hearing (see Matter of Roman v Deceus, 239 AD3d 751, 752; Matter of Perlman v Kolodny, 236 AD3d 1038, 1044).
VI. Conclusion
We determine that the father should pay a sanction for frivolous conduct pursuant to 22 NYCRR 130-1.1(c)(1) in the sum of $250. We also determine that the Family Court properly granted the mother's petition for sole legal and residential custody of the child with certain parental access to the father.
Accordingly, the motion is granted to the extent of directing the father to pay a sanction in the sum of $250; within 20 days after service of a copy of this opinion and order upon him, the father shall deposit the sum of $250 with the Clerk of this Court for transmittal to the Commissioner of Taxation and Finance (see 22 NYCRR 130-1.3), and the order is affirmed insofar as appealed from.
DUFFY, J.P., LANDICINO and QUIRK, JJ., concur.
Upon the order to show cause and the papers filed in response thereto, and upon the argument of the appeal, it is
ORDERED that the motion is granted to the extent of directing the appellant to pay a sanction in the sum of $250; within 20 days after service of a copy of this opinion and order upon him, the appellant shall deposit the sum of $250 with the Clerk of this Court for transmittal to the Commissioner of Taxation and Finance (see 22 NYCRR 130-1.3); and it is further,
ORDERED that the order is affirmed insofar as appealed from, without costs or disbursements.
ENTER:
Darrell M. Joseph
Clerk of the Court