Landberg v City of New York
2026 NY Slip Op 03935
June 23, 2026
Appellate Division, Second Department
Lasalle
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

Judith Landberg, appellant,
v
City of New York, et al., respondents.

Supreme Court of the State of New York, Appellate Division, Second Judicial Department
Decided on June 23, 2026
2025-02380, (Index No. 509670/18)
Hector D. Lasalle, P.J.
Valerie Brathwaite Nelson
Barry E. Warhit
Elena Goldberg Velazquez, JJ.

Law Offices of Michael S. Lamonsoff, PLLC, New York, NY (Michael Sanders of counsel), for appellant.
Steven Banks, Corporation Counsel, New York, NY (Melanie T. West and Elizabeth I. Freedman of counsel), for respondent City of New York.
Leon R. Kowalski (Horn Appellate Group, Brooklyn, NY [Scott T. Horn and Ross S. Friscia], of counsel), for respondent Whitman Owner Corp.

ON MOTION Appeal from an order of the Supreme Court, Kings County, dated December 20, 2024, which was determined by decision and order of this Court dated June 3, 2026. On the Court's own motion, by order to show cause dated May 20, 2026, all parties were directed to show cause why an order should or should not be made and entered imposing such sanctions and/or costs, if any, as this Court may deem appropriate, against counsel for the appellant, Law Offices of Michael S. Lamonsoff, PLLC, and Michael Sanders, Esq., pursuant to 22 NYCRR 130-1.1, for filing briefs containing fabricated and/or erroneous legal authority and/or citations.
Lasalle, P.J.

[*1]
DECISION AND ORDER ON MOTION
In this case, we impose sanctions upon an attorney and a law firm for submitting a brief, prepared with the assistance of generative artificial intelligence (hereinafter GenAI), containing citations to nonexistent cases, fictitious purported Court of Appeals quotations wholly contrary to [*2]actual law, and misrepresentations about what certain real cases actually held or decided.
Factual and Procedural Background
The plaintiff allegedly was injured when she tripped and fell on a loose brick in a tree well on a sidewalk abutting property owned by the defendant Whitman Owner Corp. (hereinafter the owner). The plaintiff subsequently commenced this action to recover damages for personal injuries against the owner and the defendant City of New York. In an order dated December 20, 2024, the Supreme Court granted the separate motions of the owner and the City for summary judgment dismissing the complaint insofar as asserted against each of them. The plaintiff appealed, and in a decision and order dated June 3, 2026, this Court affirmed the order dated December 20, 2024 (see Landberg v City of New York, ___ AD3d ___, 2026 NY Slip Op 03433).
The Plaintiff's Brief
The plaintiff's appellant's brief, submitted by Michael Sanders, Esq., on behalf of Law Offices of Michael S. Lamonsoff, PLLC (hereinafter the law firm), cited to several nonexistent cases, misstated the law, and misrepresented the holdings of real cases, as follows.
On two occasions, the plaintiff's brief purported to quote the nonexistent Court of Appeals case of Xiang Fu Ji v City of New York (13 NY3d 791, 794) for the proposition that Administrative Code of the City of New York § 7-210, which shifted tort liability for injuries resulting from defective sidewalks from the City to abutting property owners, is a remedial statute that should be "construed liberally to effectuate its remedial purpose." No case by that title exists at all, much less at the citation given by the plaintiff's brief. There is a real Court of Appeals case entitled Xiang Fu He v Troon Mgt., Inc. (34 NY3d 167), which analyzes Administrative Code § 7-210. However, Xiang Fu He does not contain the purported quotation set forth in the plaintiff's brief, characterize Administrative Code § 7-210 as remedial, or instruct that it be construed liberally. Moreover, the Court of Appeals has never used the phrase "construed liberally to effectuate its remedial purpose." In fact, the Court of Appeals has stated that Administrative Code § 7-210, because it is "in derogation of common law, and . . . creat[es] liability where none previously existed, must be strictly construed" (Vucetovic v Epsom Downs, Inc., 10 NY3d 517, 521 [emphasis added; internal quotation marks omitted]). Thus, the plaintiff's brief contained a fictitious quote, from a fictitious Court of Appeals case, which was directly contrary to what the Court of Appeals has actually said.
The plaintiff's brief also contained a fictitious quote from the fictitious case of Hausser v Giunta (88 AD3d 969, 970). The plaintiff's brief on two occasions quoted that fictitious case as stating that Administrative Code § 7-210 shifted liability for sidewalk defects from the City to abutting property owners, who are "in the best position to monitor and control" the condition of adjacent walkways. There is a real case by the name of Hausser v Giunta (217 AD2d 604, revd 88 NY2d 449) that concerned sidewalk liability, but it arose from an accident that occurred in the City of Long Beach and concerned City of Long Beach Code § 256 instead of Administrative Code § 7-210, and the decision and order does not contain the purported quotation set forth in the plaintiff's brief.
The final fictitious citation in the plaintiff's brief is to the fictitious case of Lack v Lack (841 NYS2d 403, 404), which the plaintiff's brief cited for the proposition that this Court reviews a grant of summary judgment de novo, applying the same standards as the trial court. Again, no case by that name appears at that citation, and there appears to have never been any cases in New [*3]York with that title.
In addition to citing and/or quoting the three fictitious cases, the plaintiff's brief also misrepresented the holdings of real cases. The plaintiff's brief cited Campaign for Fiscal Equity v State of New York (86 NY2d 307, 318) for the proposition that exceptions to remedial statutes should be strictly construed. In Campaign for Fiscal Equity, the plaintiffs sought a judgment declaring that the State's public school financing system was unconstitutional under the State and Federal Constitutions and unlawful under title VI of the Civil Rights Act of 1964 and the United States Department of Education's regulations implementing title VI (see Campaign for Fiscal Equity v State of New York, 86 NY2d at 312-313). The opinion in Campaign for Fiscal Equity does not use the words remedial or exception, or discuss how strictly statutes should be construed. The pin cite given in the plaintiff's brief refers to a section of the opinion discussing the standard for considering the sufficiency of a pleading on a motion pursuant to CPLR 3211(a)(7) (see Campaign for Fiscal Equity v State of New York, 86 NY2d at 318).
Finally, in discussing whether the City established that it lacked prior written notice of the alleged defect pursuant to Administrative Code § 7-201(c), the plaintiff's brief stated that "[w]hile Rodgers v. City of New York, 34 A.D.3d 555 (2d Dep't 2006), held that a two-year search can be sufficient, that holding is not a blanket rule applicable in all circumstances." However, Rodgers concerned only a motion by an adjacent landowner, and not the City, and did not address the issue of prior written notice or how long a time frame a municipality must search its records in order to establish the lack of prior written notice (see Rodgers v City of New York, 34 AD3d 555, 555-556). In other words, Rodgers said nothing remotely related to whether a two-year search can be sufficient.
Although the attorneys for the owner and the City, who are officers of the court, submitted respondents' briefs, neither of them alerted this Court about the fabricated citations, fabricated quotations, misstatements of law, and misrepresentations regarding the holdings of real cases contained in the plaintiff's brief.
Oral Argument
On May 20, 2026, Sanders appeared before this Court and argued the appeal on behalf of the plaintiff. During the argument, members of the panel raised concerns about fictitious and erroneous citations and quotations, and misrepresentations of law contained in the plaintiff's brief. After Sanders indicated that he was not prepared to speak on the cases at issue, Sanders was offered the opportunity to take a 15-minute recess, which Sanders declined. Sanders stated that he personally wrote the plaintiff's brief. While Sanders initially confirmed that the authorities within the brief came from Lexis, Westlaw, or a book, or were "cited from a previous case," he later hypothesized that the erroneous citations may have possibly been the product of him "over-relying" on "other briefs" or string cites.
This Court's Order to Show Cause and the Responding Affirmations
On the Court's own motion, by order to show cause dated May 20, 2026, all parties were directed to show cause why an order should or should not be made and entered imposing sanctions and/or costs, if any, against Sanders and the law firm, "for filing briefs containing fabricated and/or erroneous legal authority and/or citations."
In response, Sanders submitted an affirmation in which he stated that he took "full responsibility for the deficiencies identified by the Court," and acknowledged submitting "a brief [*4]to this Court unknowingly with three fabricated citations." Although he stated that he "carefully reviewed [his] brief" after oral argument, Sanders did not identify or acknowledge the brief's misstatements of the law or misrepresentations about the holdings of certain real cases cited. Sanders's affirmation did not mention anything about Rodgers v City of New York (34 AD3d 555), even though a member of the panel had identified that case during oral argument as a case about which the plaintiff's brief contained a misrepresentation of the law.
Sanders stated that in connection with his research, he recalled "utilizing traditional legal research resources, including Westlaw, appellate briefs, publicly available sources, and other secondary materials. However, [he] also recall[ed] utilizing artificial intelligence-assisted research tools but [did] not recall which exact tool [he] used, it was one of the free ones available to the public." Sanders stated that after carefully reviewing the brief, it was his "belief that the non-existent citations identified by the Court originated during the AI-assisted portion of [his] supplemental research which [he] negligently failed to verify before filing [the plaintiff's] brief with this Court." Sanders stated that this was a violation of the policy of the law firm, which "had made known its policy that all AI generated citations to facts and the law required personal review and confirmation by the lawyers using artificial intelligence tools."
Sanders further stated in his affirmation that when he appeared for oral argument and the Court asked him where the fabricated cases came from, he "should have stated that they were hallucinated by artificial intelligence. [He] was genuinely scared at the time. It felt like [his] career was on the line, and [he] was afraid to even use the words 'AI.'" Sanders went on to "expla[in], not justif[y]" that he was
"confused and stunned at the questioning because [he] was prepared to address the nuance of the cases [he] cited for the central legal issue as to whether the location of the accident qualified as a 'tree well' within the meaning of Administrative Code § 7-210. The cases with the wrong citations were cited for the more simple, and [he] believed to be non-questionable basic principles of Administrative Code § 7-210."
Sanders stated that he was "deeply embarrassed" for his error and that he "can assure this Court with every fiber in [his] body that going forward, [he] will be extremely rigorous, to verify every citation in any paper [he] ever file[s] going forward."
The law firm also submitted an affirmation of its general counsel, Stacey Haskel, who stated that prior to this unfortunate incident, Sanders, who had been employed at the law firm since 2024, "maintained an unblemished record, and [she had] never received a single complaint regarding his work product, his ethics, or his diligence." Haskel stated that she was "shocked to learn that, completely contrary to [the law] firm['s] policy, Mr. Sanders utilized generative artificial intelligence tools in a manner that exceeded the scope of technology approved for use by the [law firm]." Haskel stated that while recognizing the severity of the error, the law firm had "accepted Mr. Sanders's sincere apology and his solemn assurances that this will never happen again. We believe he is genuinely remorseful and understands the gravity of his oversight." Haskel stated that the law firm "recognizes that a stern reminder of our professional responsibilities to all staff is required" and that it "scheduled multiple comprehensive ethics sessions for the entirety of the [law firm's] legal and support staff, focusing explicitly on technology and generative AI in legal practice." Finally, Haskel stated that the law firm "has made it unequivocally clear that any future deviation from these standards will be met with [*5]immediate disciplinary action."
Discussion
A court "in its discretion, may award to any party or attorney in any civil action or proceeding before the court, except where prohibited by law, costs in the form of reimbursement for actual expenses reasonably incurred and reasonable attorney's fees, resulting from frivolous conduct" (22 NYCRR 130-1.1[a]). "In addition to or in lieu of awarding costs, the court, in its discretion may impose financial sanctions upon any party or attorney in a civil action or proceeding who engages in frivolous conduct" (id.). Conduct is frivolous if: "(1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law; (2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or (3) it asserts material factual statements that are false" (id. § 130-1.1[c]). "In determining whether the conduct undertaken was frivolous, the court shall consider, among other issues the circumstances under which the conduct took place, including the time available for investigating the legal or factual basis of the conduct, and whether or not the conduct was continued when its lack of legal or factual basis was apparent, should have been apparent, or was brought to the attention of counsel or the party" (id.). In determining an appropriate sanction, "courts must consider that sanctions are both retributive, in that they punish past conduct, but are also goal oriented, in that they are useful in deterring future frivolous conduct not only by the particular parties, but also by the [b]ar at large" (Deutsche Bank Natl. Trust Co. v LeTennier, ___ AD3d ___, ___, 2026 NY Slip Op 00040, *5-6 [internal quotation marks omitted]).
As this Court discussed recently in Matter of Julien v Arthur (___ AD3d ___, 2026 NY Slip Op 03308, *1-2), "[c]ourts across the country have recognized the pitfalls posed by the use of GenAI in drafting briefs and other memoranda without verifying the accuracy of the information generated." "In particular, courts have noted the risk of GenAI hallucinations, which may take the form of citations to nonexistent cases, fabricated quotations from actual cases, or misstatements of law that are not representative of what a case actually decided" (Matter of Julien v Arthur, ___ AD3d at ___, 2026 NY Slip Op 03308, *2 [internal quotation marks omitted]). "The danger posed by GenAI hallucinations lies not merely in their inaccuracy, but also in their tendency to masquerade as a genuine citation or statement of law, resulting in a waste of time and money to the opposing party in exposing the deception and an unnecessary burden on the court's resources" (Matter of Julien v Arthur, ___ AD3d at ___, 2026 NY Slip Op 03308, *2 [citation and internal quotation marks omitted]).
"Many harms flow from the submission of fake opinions. The opposing party wastes time and money in exposing the deception. The Court's time is taken from other important endeavors. The client may be deprived of arguments based on authentic judicial precedents. There is potential harm to the reputation of judges and courts whose names are falsely invoked as authors of the bogus opinions and to the reputation of a party attributed with fictional conduct. It promotes cynicism about the legal profession and the American judicial system" (Mata v Avianca, Inc., 678 F Supp 3d 443, 448 [SD NY] [footnote omitted]).
As stated by the Appellate Division, Third Department,
"[t]o be clear, attorneys and litigants are not prohibited from using GenAI to assist with the [*6]preparation of court submissions. The issue arises when attorneys and staff are not sufficiently trained on the dangers of such technology, and instead erroneously rely on it without human oversight. As with the work from a paralegal, intern or another attorney, the use of GenAI in no way abrogates an attorney's or litigant's obligation to fact check and cite check every document filed with a court. To do otherwise may be sanctionable, depending on the facts and particular circumstances of each case" (Deutsche Bank Natl. Trust Co. v LeTennier, ___ AD3d at ___, 2026 NY Slip Op 00040, *6-7).
"The misuse of AI technology also implicates [a] lawyer's ethical duty to provide independent professional judgment in rendering legal services. Undoubtedly, lawyers are selected and hired by the public for their judgment and counsel" (Grymes Dev. Co. v Fodera, 88 Misc 3d 767, 772 [Sup Ct, Richmond County]).
In Matter of Julien, this Court held that by filing an appellate brief citing to a nonexistent case as the sole support for his claim of judicial bias, the pro se father in a child custody proceeding engaged in conduct that was "completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law" (22 NYCRR 130-1.1[c][1]) and that involved the assertion of "material factual statements that are false" (id. § 130-1.1[c][3]; see Matter of Julien v Arthur, ___ AD3d at ___, 2026 NY Slip Op 03308, *2). Under the circumstances presented, including the father's pro se status, the fact that he cited only one nonexistent case, and that he readily acknowledged his misplaced reliance on GenAI once he was alerted to the issue without further reoccurrence, this Court deemed it appropriate to impose a monetary sanction in the sum of $250 (see Matter of Julien v Arthur, ___ AD3d at ___, 2026 NY Slip Op 03308, *2).
This case is obviously much more egregious in that the person who filed the subject brief is a trained attorney with access to legal research materials, including Westlaw, and who is bound by the Rules of Professional Conduct (see Rules of Prof Conduct [22 NYCRR 1200.0] rules 1.1[a]; 3.3[a][1]; 8.4[d], [h]; Matter of Zareh, ___ AD3d ___, ___, 2026 NY Slip Op 00619 [determining, in the context of an attorney discipline proceeding, that a public censure was an appropriate sanction for an attorney who submitted a brief containing citation errors and misrepresentations of law, which was determined to have been drafted using GenAI]). Further, stories about the unreliability of GenAI in performing legal work, leading to fictitious citations, misrepresentations of the law, and sanctions, have been widespread in the media for years, putting all attorneys on notice of this (see e.g. Benjamin Weiser, Lawyer Who Used ChatGPT Faces Penalty for Made Up Citations, NY Times, June 8, 2023, available at https://www.nytimes.com/2023/06/08/nyregion/lawyer-chatgpt-sanctions.html [last accessed June 22, 2026]).
Moreover, when confronted about the fabricated cases cited in his brief at oral argument, Sanders declined the opportunity to take a 15-minute recess to discern where he had found the cases, and maintained that he had found them either on Westlaw or Lexis or in a book, a previous case, or another brief. As Sanders later admitted in his affirmation, he was not being candid at the time of oral argument, as he should have said that the cases were hallucinated by artificial intelligence. Sanders "expla[ined]" that his decision to be dishonest with the Court was due to being "scared." This may be true. However, Sanders's decision not to be honest with the Court during oral argument also demonstrated his professional immaturity, arrogance, and profound [*7]lack of respect for the judicial system.
Even after being given the opportunity to respond to the Court's concerns in writing, it appears that Sanders was still not completely candid. In his affirmation, Sanders recalled using artificial intelligence research tools in connection with his supplemental legal research, which he blamed for the three fictitious cases that were cited for what he believed to be "non-questionable basic principles" of law. However, as outlined above, the brief that Sanders submitted did not merely contain fictitious case citations for non-questionable principles of law. The brief also contained fabricated quotations from the Court of Appeals, which said the opposite of what the Court of Appeals has actually said about whether Administrative Code § 7-210 is to be construed liberally or strictly. In addition, the brief completely misrepresented what was decided or discussed in two real cases cited therein. Since "fabricated quotations from actual cases" and "misstatements of law that are not representative of what a case actually decided" are well-recognized "pitfalls posed by the use of GenAI in drafting briefs" (Matter of Julien v Arthur, ___ AD3d at ___, 2026 NY Slip Op 03308, *1-2), it appears that GenAI was used to do more than simply conduct supplemental research, as suggested by Sanders in his affirmation. Sanders wholly failed to fulfill his obligation to review the work of GenAI to prevent the submission to this Court of a brief containing significant misrepresentations of the law.
Under all of the circumstances presented, including Sanders's lack of candor and submission of a brief with fabricated quotations that significantly misstated the law and with other misstatements that wholly misrepresented what certain real cases actually decided, we deem it appropriate to impose a monetary sanction on Sanders in the sum of $8,000 (see Deutsche Bank Natl. Trust Co. v LeTennier, ___ AD3d at ___, 2026 NY Slip Op 00040, *6; Grymes Dev. Co. v Fodera, 88 Misc 3d at 773; Idehen v Stoute-Philip, 86 Misc 3d 1244[A], 2025 NY Slip Op 51211[U] [Civ Ct, Queens County]; Fletcher v Experian Info. Solutions, Inc., 168 F4th 231, 240 [5th Cir]; Mata v Avianca, Inc., 678 F Supp 3d at 461-466).
As for the law firm, we credit Haskel's statements in her affirmation that Sanders's actions were contrary to the law firm's policy, and that the law firm had no reason to believe that Sanders was using GenAI in a manner that exceeded the scope of technology approved for use by the law firm. Nevertheless, as the law firm's name appeared on a brief that contained significant misrepresentations, and in light of the deterrent purpose of sanctions, we deem it appropriate to impose a monetary sanction on the law firm in the sum of $2,500.
In their affirmations in response to this Court's order to show cause, neither of the defendant's attorneys requests the imposition of costs, and neither of the defendants has submitted billing statements. Accordingly, this Court will not award costs pursuant to 22 NYCRR 130-1.1(a).
We note that the issue before this Court now is limited to whether the conduct of the attorney and the law firm warrants sanctions. Whether disciplinary action is also warranted may be a matter for the Attorney Grievance Committee.
BRATHWAITE NELSON, WARHIT and GOLDBERG VELAZQUEZ, JJ., concur.
Upon the order to show cause dated May 20, 2026, and the papers filed in response thereto, it is
ORDERED that within 20 days of service upon him of a copy of this opinion and order [*8]on motion, Michael Sanders, Esq., is directed to pay a sanction in the sum of $8,000 to the Lawyers' Fund for Client Protection of the State of New York; and it is further,
ORDERED that within 20 days of service upon it of a copy of this opinion and order on motion, Law Offices of Michael S. Lamonsoff, PLLC, is directed to pay a sanction in the sum of $2,500 to the Lawyers' Fund for Client Protection of the State of New York; and it is further,
ORDERED within 10 days after payment of the sanctions, Michael Sanders, Esq., and Law Offices of Michael S. Lamonsoff, PLLC, shall file proof of payment with the Clerk of this Court; and it is further,
ORDERED that the motion is otherwise denied; and it is further,
ORDERED that the Clerk of this Court, or his designee, is directed to serve counsel for the parties with a copy of this opinion and order on motion at the email address provided to this Court.
ENTER:
Darrell M. Joseph
Clerk of the Court